**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **NANCY DARDARIAN** and **NATHAN THOMS**, individually and on behalf of all others similarly situated,<br><br>      **Plaintiffs,**<br><br>      vs.<br><br>**OFFICEMAX NORTH AMERICA, INC.,**<br><br>      **Defendant.** | Case No.: 11-CV-0947-YGR<br><br>**ORDER DETERMINING THAT** ***PINEDA V. WILLIAMS-SONOMA STORES, INC.*** **APPLIES RETROSPECTIVELY TO OFFICEMAX** |

Plaintiffs Nancy Dardarian and Nathan Thoms bring this putative class action against OfficeMax North America, Inc. ("OfficeMax"), alleging that OfficeMax's policy of requesting ZIP[1] code information during credit card transactions violates the Song-Beverly Credit Card Act of 1971, California Civil Code § 1747.08 ("Song-Beverly Act"). The California Supreme Court unambiguously held in *Pineda v. Williams-Sonoma Stores, Inc.*, 51 Cal. 4th 524 (Cal. 2011), that this practice does violate the Song-Beverly Act and applied its decision retrospectively in that case.

OfficeMax brings this Motion, arguing that given its unique factual circumstances, the *Pineda* decision should apply only prospectively to OfficeMax. This matter came on for hearing on June 12, 2012.

Having carefully considered the papers submitted, the oral argument of counsel, and the pleadings in this action, for the reasons set forth below, the Court hereby holds that the *Pineda* decision applies retrospectively in this case.

---

[1] ZIP is an acronym that stands for "Zone Improvement Plan." *Pineda v. Williams-Sonoma Stores, Inc.*, 51 Cal. 4th 524, 527 n.2 (Cal. 2011).

## I. BACKGROUND

### A. SONG-BEVERLY ACT AND INSTANT CONSOLIDATED ACTION

The Song-Beverly Act prohibits a retailer from requesting or requiring personal information from a customer for a credit card transaction. It provides, in pertinent part, that:

> no person, firm, partnership, association, or corporation that accepts credit cards for the transaction of business shall . . . [r]equest, or require as a condition to accepting the credit card as payment in full or in part for goods or services, the cardholder to provide personal identification information, which the person, firm, partnership, association, or corporation accepting the credit card writes, causes to be written, or otherwise records upon the credit card transaction form or otherwise.

Cal. Civ. Code § 1747.08(a)(3). Subsection (b) defines personal identification information as "information concerning the credit cardholder, other than information set forth on the credit card, and including, but not limited to, the cardholder's address and telephone number." *Id.* § 1747.08(b). In *Pineda*, issued on February 10, 2011, the California Supreme Court concluded that "[t]he only reasonable interpretation of section 1747.08 is that personal information includes a cardholder's ZIP code." 51 Cal. 4th at 534.

Here, Defendant OfficeMax employed an "Information Capture Policy," until February 10, 2011, whereby its cashiers would request and record the ZIP codes of customers using credit cards. Both named Plaintiffs allege that when they purchased merchandise at one of Defendant's California stores[2] with a credit card, the store clerk asked them for personal identification information, including their ZIP code. In response to the request, each Plaintiff provided their personal identification information to the clerk, and the clerk recorded their information into OfficeMax's electronic database. OfficeMax submits that it used the information to analyze media markets and decide where to place advertisements as opposed to locating the customer's full address by reverse engineering. *See* Bilyk Dep. 13:12-19, Dkt. No. 47-6.

Plaintiffs allege that Defendant's conduct violated the Song-Beverly Act and seek to recover damages on behalf of themselves and all persons from whom OfficeMax requested and recorded personal identification information in conjunction with a credit card transaction in California. The

---

[2] Plaintiffs allege that they made their purchases "During the Liability Period . . . at one of Defendant's stores located in California." Dkt. No. 31 ¶¶ 7, 8.

relevant liability period begins March 1, 2010, and continues through the date of trial.[3]

**B.   THE FIRST *THOMS* LAWSUIT**

In May 2008, Plaintiff Nathan Thoms filed an earlier lawsuit against OfficeMax in the Sacramento County Superior Court alleging that OfficeMax's practice of requesting and recording ZIP code information during credit card transactions violated the Song-Beverly Act and other statutes. OfficeMax demurred to the complaint on the basis that ZIP codes are not personal information. Stonebarger Dec., Ex. A, "Order Overruling Defendant's Demurrer," Dkt. No. 50-2. On September 25, 2008 the Superior Court judge overruled OfficeMax's demurrer, finding that "the statute is clear on its face. A ZIP Code constitutes 'personal identification information' under the statute." *Id*.

In December of 2008, in *Party City v. Superior Court*, 169 Cal. App. 4th 497 (Cal. Ct. App. 2008), California's Fourth District Court of Appeal held that ZIP code information is not personal identification information. Following *Party City*, on January 30, 2009, OfficeMax renewed its demurrer to Thoms' complaint. On April 21, 2009, the Superior Court dismissed Thoms' Song-Beverly Act claim against OfficeMax without leave to amend, holding that based on the *Party City* decision, ZIP code information is not personal identification information. Neumeyer Dec., Exs. C-D, Dkt. Nos. 47-3–47-4. The Superior Court noted that the "decision in *Party City* is binding on this Court, whether it agrees with it or not." Neumeyer Dec., Ex. C, p. 3:7. The Fourth District Court of Appeal followed its holding in *Party City* in three other cases: *Pineda v. Williams-Sonoma Stores, Inc.*[4]; *Carson v. Michaels Stores, Inc.*[5]; and *Alvarez v. KMart Holding Corp*.[6]

The California Supreme Court denied a petition to review *Party City* on April 1, 2009. Seven months later, the plaintiff in *Pineda* filed a Petition for Review, which the California Supreme Court

---

[3] Plaintiffs filed their complaints against OfficeMax in March 2011. Dardarian filed her lawsuit in the Northern District of California on March 1, 2011. *See* Dkt. No. 1. Thoms filed his lawsuit in the San Francisco Superior Court on March 4, 2011. *See Thoms v. OfficeMax North America, Inc.*, Case No. 11-2233, "Notice of Removal," Dkt. No. 1. The *Thoms* action was removed on May 6, 2011 and related to the *Dardarian* action on July 27, 2011. *See* Case No. 11-0947, Dkt. No. 20; Case No. 11-2233, Dkt. No. 20.

[4] 178 Cal. App. 4th 714 (Cal. Ct. App. 2009), *rev. granted and opinion superseded*, 225 P.3d 1080 (Cal. 2010), *and rev'd*, 51 Cal. 4th 524 (Cal. 2011).

[5] 2010 WL 2862077 (Cal. Ct. App. Jul. 22, 2010), *rev. granted* (Sep. 29, 2010), *transferred* (Mar 30, 2011), *remanded and rev'd*, 2011 WL 2120195 (Cal. Ct. App. May 31, 2011)

[6] 2010 WL 3835861 (Cal. Ct. App. Sep. 30, 2010), *rev. granted* (Jan. 12, 2011), *remanded and rev'd*, 2011 WL 2157791 (Cal. Ct. App. Jun. 2, 2011), *reh'g denied* (Jun. 28, 2011).

granted on February 10, 2010.  225 P.3d 1080 (Cal. 2010).  The Grant of Review identified briefing and argument on the following issue:

> Does a retailer violate the Song-Beverly Act of 1971 (Civ. Code., § 1747 et seq.), which prohibits a retailer from recording a customer's "personal identification information" when the customer uses a credit card in a transaction, by recording a customer's ZIP code for the purpose of later using it and the customer's name to obtain the customer's address through a reverse search database?

*Id*.

Briefing before the California Supreme Court focused on whether a ZIP code is "personal identification information" as that term is defined by the Song-Beverly Act[7] and was *not* limited to whether "reverse engineering" a customer's name and ZIP code to obtain the customer's address violates that Act.  Notwithstanding the California Supreme Court's grant of review on February 10, 2010, OfficeMax continued its practice of collecting ZIP code information from its customers until the California Supreme Court rendered its opinion in *Pineda* on February 10, 2011.

### C.   THE CALIFORNIA SUPREME COURT'S *PINEDA* DECISION

In *Pineda*, the California Supreme Court held a cardholder's ZIP code "constitutes 'personal identification information' as that phrase is used in section 1747.08."  51 Cal. 4th at 527.  The court's opinion did not focus exclusively on reverse engineering, and as noted in the previous paragraph, neither did the parties' underlying briefing.  After analyzing the text, history and purpose of the Song-Beverly Act, the court concluded that "[t]he only reasonable interpretation of section 1747.08 is that personal information includes a cardholder's ZIP code."  *Id.* at 534.  Thus, it held that "requesting and recording a cardholder's ZIP code, without more, violates the statute."  *Id*. at 527-28.

In *Pineda*, the California Supreme Court applied this statutory interpretation retrospectively.  *Id.* at 536.  The court rejected the defendant's due process argument because there was only one reasonable interpretation of the Song-Beverly Act, and thus, the statute "provides constitutionally adequate notice of proscribed conduct."  *Id.*  The court also discounted the defendant's contention that it could have reasonably relied on the *Party City* decision because, "while *Party City* reached a contrary conclusion, both defendant's conduct and the filing of plaintiff's complaint predate that

---

[7] *See Pineda v. Williams-Sonoma Stores, Inc.*, 2010 WL 1748366 (Mar. 12, 2010) (Opening Brief on the Merits); 2010 WL 1843740 (Apr. 12, 2010) (Answer Brief on the Merits); 2010 WL 2661406 (May 3, 2010) (Reply to Answer Brief on the Merits).

decision; it therefore cannot be convincingly argued that the practice of asking customers for their ZIP codes was adopted in reliance on *Party City*." *Id.* ("Indeed, it is difficult to see how a single decision by an inferior court could provide a basis to depart from the assumption of retrospective operation."). As such, the court concluded that the defendant failed to identify any reason to justify departure from the usual rule of retrospective application in that case. *Id.*

Following *Pineda*, the Fourth District Court of Appeal in *Alvarez v. Brookstone Co., Inc.*, 202 Cal. App. 4th 1023, 1029 (Cal. Ct. App. 2011), applied *Pineda* retrospectively. In *Alvarez*, the Court of Appeal also rejected the defendant's argument that it had reasonably relied on *Party City*'s interpretation in deciding how to conduct its credit card transactions because, like *Pineda*, the defendant's conduct and the filing of the complaint predated *Party City*. The Court of Appeal further rejected the defendant's "assertion that the California Supreme Court implicitly sanctioned or approved *Party City*'s holding when it denied the plaintiff's petition for review of that decision" because the California Supreme Court stated that *Party City* "could *not* 'provide a basis to depart from the assumption of retrospective operation.'" *Id.* at 1031 (quoting *Pineda*, *supra*, Cal. 4th at 536) (emphasis in original).

Plaintiffs argue that the California Supreme Court unambiguously made the broad pronouncement that *Pineda* is subject to retrospective application as confirmed by *Alvarez*. Pls.' Opp'n 7. Defendant argues that both retroactivity rulings were limited to the specific facts of that particular case and it seeks a determination of whether the facts of this case warrant retrospective application of the *Pineda* holding.

**II.     DISCUSSION**

"When questions of state law[8] are at issue, state courts generally have the authority to determine the retroactivity of their own decisions." *American Trucking Assns., Inc. v. Smith*, 496 U.S. 167, 177 (1990) (quoted in *In re Ret. Cases*, 110 Cal. App. 4th 426, 465 (Cal. Ct. App. 2003)). This Court must follow the California Supreme Court's pronouncements regarding interpretations of state law. *Orkin v. Taylor*, 487 F.3d 734, 741 (9th Cir. 2007). If the California Supreme Court has not

---

[8] This is a diversity case so the Court applies substantive state law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

addressed the question, then this Court "must predict how the state's highest court would decide the question." *Id.*

The general rule in California[9] is that judicial decisions apply retrospectively. *Newman v. Emerson Radio Corp.*, 48 Cal. 3d 973, 978, 981-82 (Cal. 1989); *Grobeson v. City of Los Angeles*, 190 Cal. App. 4th 778, 796 (Cal. Ct. App. 2010).[10] Departures from this general rule of retroactivity involve "considerations of fairness and public policy." *Id.* The concept of "fairness" implicates (1) reliance on the former rule of law; and (2) the foreseeability of a change in law. *See Estate of Propst*, 50 Cal. 3d 448, 463 (1990); *Newman*, *supra*, 48 Cal. 3d at 985-86. Since OfficeMax is arguing that the exception to the general rule applies to it, it has the burden of proof. *See in re Ret. Cases*, *supra*, 110 Cal. App. 4th at 443 (citing *Propst*, *supra*, 50 Cal. 3d at 465).

**A.   FAIRNESS**

   *1.   Reliance*

The first factor in evaluating fairness is whether departure from the general rule of retroactivity is justified based on reasonable reliance on the former rule of law. Prospective application based upon a party's reasonable reliance may be appropriate when a decision constitutes a "clear break" from (i) prior decisions of the California Supreme Court,[11] (ii) a practice impliedly sanctioned by prior decisions of the California Supreme Court,[12] or (iii) "a longstanding and

---

[9] This rule is not unique to California: "the principle that statutes operate only prospectively, while judicial decisions operate retrospectively, is familiar to every law student." *United States v. Sec. Indus. Bank*, 459 U.S. 70, 79 (1982).

[10] This reflects the declaratory theory of the law, according to which the new decision does not pronounce new law but rather states what the law always was. *In re Ret. Cases*, *supra*, 110 Cal. App. 4th at 449 ("when a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation and that the effect is not that the former decision was bad law but that it never was the law") (quoting *County of Los Angeles v. Faus*, 48 Cal. 2d 672, 680-81 (Cal. 1957), *abrogated on other grounds by* Cal. Evid. Code § 822).

[11] *See Moradi-Shalal v. Fireman's Fund Ins. Co.*, 46 Cal. 3d 287, 305 (Cal. 1988) (applying holding prospectively in the interest of fairness to the substantial number of plaintiffs who had already initiated their suits in reliance on *Royal Globe* rule that created a private cause of action against insurers for unfair business practices).

[12] *See North v. Superior Court*, 8 Cal. 3d 301, 312 (Cal. 1972) (impliedly sanctioning practice of monitoring prison inmates' conversations with *dictum* that "nothing in our opinion should be deemed a disapproval of the common practice").

widespread practice expressly approved by a near-unanimous body of lower-court authorities."[13] *Grafton Partners L.P. v. Superior Court*, 36 Cal. 4th 944, 967 (2005). The "most compelling example" of reasonable reliance on a prior judicial decision "occurs when a party has acquired a vested right or entered into a contract[14] based on the former rule." *Newman*, *supra*, 48 Cal. 3d at 989. However, reliance upon prior misconstruction of a statute by a lower court does not operate to prevent the retrospective application of the California Supreme Court's authoritative interpretation. *People v. Garcia*, 36 Cal. 3d 539 (Cal. 1984) ("Whenever a decision undertakes to vindicate the original meaning of an enactment, putting into effect the policy intended from its inception, retroactive application is essential to accomplish that aim. If in addition, . . . the decision represents the first authoritative construction of the enactment, no history of extended and justified reliance upon a contrary interpretation will arise to argue against retroactivity") (citation omitted).

Defendant cannot show reasonable reliance based upon either of the first two factors. *Pineda* neither expressly overruled California Supreme Court precedent nor did it disapprove a practice impliedly sanctioned by prior decisions. As the California Supreme Court had not previously issued a definitive ruling on whether ZIP codes were personal identification information under the Song-Beverly Act, *Pineda* did not overrule a California Supreme Court precedent and thus, was not a clear break from a well-established prior "rule." Furthermore, the California Supreme Court did not impliedly sanction the *Party City* decision when it denied review. *Alvarez*, *supra*, 202 Cal. App. 4th at 1031 (concluding Supreme Court did not implicitly sanction holding of *Party City* when it denied review where California Supreme Court explicitly stated that *Party City* "could *not* 'provide a basis to depart from the assumption of retrospective operation.'") (quoting *Pineda*, *supra*, Cal. 4th at 536 (emphasis in original)). The only remaining option is if OfficeMax relied on "a longstanding and widespread practice expressly approved by a near-unanimous body of lower-court authorities."

---

[13] *See, e.g., Camper v. Workers' Comp. Appeals Bd.*, 3 Cal. 4th 679, 689 (Cal. 1992) (procedural change that affected calculation of date to file writ of review under Labor Code applied prospectively where appellate courts established a rule upon which litigants could reasonably have relied in determining when to file a writ).

[14] *See Claxton v. Waters*, 34 Cal. 4th 367, 378-79 (Cal. 2004) (decision prohibiting use of extrinsic evidence to show that in signing preprinted standard workers' compensation release form parties' intended to release claims outside the workers' compensation system was applied prospectively where the change affected a rule upon which parties may have relied in settling claims).

7

### a) **Reasonableness of relying upon *Party City*.**

In *Pineda*, the California Supreme Court concluded that there was only one *reasonable* interpretation of the Song-Beverly Act, "that personal information includes a cardholder's ZIP code." 51 Cal. 4th at 534.  This Court agrees.  It bears repeating that the statute on its face provides that no person "shall . . . [r]equest, or require . . . any personal identification information," which it defines as "information concerning the cardholder, other than information set forth on the card . . .." Cal. Civ. Code § 1747.08(a), (b).  Such information includes, "but [is] not limited to, the cardholder's address and telephone number." *Id.*  A ZIP code "is readily understood to be part of an address" and is not set forth on the credit card.  *Pineda*, *supra*, 51 Cal. 4th at 536.  The question is not just whether it was reasonable to rely on pronouncements of intermediate and lower courts, but whether it was reasonable to rely on pronouncements that were "not only incorrect, but also unreasonable." *Alvarez*, *supra*, 202 Cal. App. 4th at 1030 (citing *Pineda*, *supra*, 51 Cal. 4th at 534).

Here, a number of lawsuits were filed at approximately the same time to enforce the terms of the Song-Beverly Act.  The *Party City* "rule" stood for less than two years before the California Supreme Court granted review of *Pineda*.  The "rule" was followed in three subsequent cases in the Fourth District Court of Appeal: *Alvarez v. KMart Holding Corp.*, *Carson v. Michaels Stores, Inc.*, and *Pineda*.  This is hardly settled law.  By definition, this small, recent set of opinions from one appellate district does not constitute a longstanding and widespread rule within the meaning of the retroactivity precedents. *See Droeger v. Friedman, Sloan & Ross*, 54 Cal. 3d 26, 45-46 (Cal. 1991) (ten years not longstanding, but "fairly recent"); *Newman*, *supra*, 48 Cal. 3d at 986 (six years not "longstanding" to justify any reliance on intermediate and lower court decisions).

### b) **Reasonableness of OfficeMax's reliance on *Party City* and *Thoms*.**

OfficeMax argues that it would be unfair to apply *Pineda* retrospectively to conduct that occurred after it obtained a favorable ruling from a Superior Court judge in April 2009, which held that requesting and recording ZIP code information does not violate the Song-Beverly Act. OfficeMax attempts to distinguish both *Pineda* and *Alvarez* on the basis that those cases involved conduct and lawsuits that predated *Party City*, whereas here, the conduct occurred not only after *Party City* but after the *Thoms* case in which OfficeMax was a litigant.  OfficeMax contends that it

8

reasonably relied upon the April 2009 favorable ruling, to *continue* its practice of requesting ZIP code information.

While OfficeMax's conduct here, unlike the conduct at issue in *Pineda* and *Alvarez*, may have postdated the *Party City* decision as well as the *Thoms* case in which it was a litigant, OfficeMax does not contend that it adopted its policy of requesting and recording ZIP code information in reliance on either *Party City* or *Thoms*. It argues only that it relied upon these rulings to *continue* this practice. Of further note, OfficeMax did not stop its practice of requesting ZIP code information when the trial court in *Thoms* initially rejected OfficeMax's position and held that "the statute is clear on its face. A ZIP Code constitutes 'personal identification information' under the statute." *See* Order Overruling Defendant's Demurrer, Dkt. No. 50-2. Instead, OfficeMax continued its practice until the California Supreme Court's February 10, 2011 decision in *Pineda*. Accordingly, OfficeMax's reliance on the *Party City* and *Thoms* decisions appears to be based more on expedience than reasonableness; OfficeMax's conduct never changed. Thus, here, as was the case in *Pineda* and *Alvarez*, it "cannot be convincingly argued that the practice of asking customers for their ZIP codes was *adopted* in reliance on *Party City*" or *Thoms*. *Pineda*, *supra*, 51 Cal. 4th at 536 (emphasis added). The decision to continue with the *status quo* is not a compelling example of detrimental reliance on a former rule that might make retrospective application of a judicial decision unfair.[15]

Based on the foregoing analysis, the Court concludes that the reliance factor does not weigh in favor of departing from the usual rule of retrospective application of judicial decisions.

### 2. *Foreseeability*

The second factor under "fairness" focuses on whether litigants can "foresee the coming change in the law." *Peterson v. Superior Court*, 31 Cal. 3d 147, 153 (Cal. 1982).[16] Here,

---

[15] It would be an anomalous result to conclude that it is unfair for OfficeMax to face liability for conduct beginning in March 2010 when but for the disposition of *Thoms I* – a ruling based on an interpretation of the Song-Beverly Act that was not only incorrect but unreasonable – OfficeMax would be facing liability for conduct dating back to 2007. Prospective application would deprive Thoms of any remedy whatsoever. By contrast, retroactive application here simply preserves Thoms' right to a day in court.

[16] *Moss v. Superior Court (Ortiz)*, 17 Cal. 4th 396, 428-30 (Cal. 1998) (due process precluded retroactive application of rule allowing court to hold parent in contempt for inability to comply with a child support order where parent failed to seek employment because effect would be to make conduct that was not subject to criminal contempt sanctions at the time it was committed contemptuous).

OfficeMax argues that it believed that the California Supreme Court's February 10, 2010 order granting review in *Pineda* was limited to whether reverse engineering of ZIP codes to obtain customers' addresses was unlawful. Byrd Dec., Dkt. No. 46, ¶ 4.[17] OfficeMax contends that it has never engaged in reverse engineering and, therefore, believed the Supreme Court's review did not concern OfficeMax. Consequently, it continued its practice of requesting and recording ZIP codes during the class period. Neumeyer Dec., Ex. E. OfficeMax argues that it was unforeseeable that *Pineda*'s holding would be broader than the grant of review.

Though the grant of review in *Pineda* was limited to whether "reverse engineering" violates the Song-Beverly Act, the parties' briefing was *not* so limited, but rather it focused on whether a ZIP code is "personal identification information" as that term is defined by the Song-Beverly Act.[18] Therefore, even if the question of whether a ZIP code is "personal identification information" was not certified for review, it was foreseeable that the California Supreme Court would review the very issue that the parties briefed – either as early as March 12, 2010, when plaintiff addressed the issue in her Opening Brief, but certainly no later than April 12, 2010, when defendant also addressed the issue in its Answer Brief.[19] Accordingly, the Court disagrees that the grant of review in *Pineda* made the *Pineda* decision unforeseeable.

The Court of Appeal in *Alvarez* also rejected the contention that *Pineda*'s change in decisional law was unforeseeable in light of contrary interpretations by certain trial courts. The unsettled nature of the rule, alone, negates OfficeMax's contention that *Pineda* was unforeseeable. Moreover, the Court of Appeal in *Alvarez* noted that "*Pineda* concluded its interpretation [of the Song-Beverly Act] was the *only* reasonable interpretation." *Alvarez*, 202 Cal. App. 4th at 1029-30.[20] It bears repeating

---

[17] Benjamin Byrd, the Manager of Store Operations declared that he "understood that the order granting review limited the issue to whether reverse engineering a customer's zip code information to obtain the customer's address is a violation of California law." Byrd Dec. ¶ 4. There is no indication that Mr. Byrd is an attorney or that he relied upon the advice of an attorney to come to this understanding.

[18] *See Pineda v. Williams-Sonoma Stores, Inc.*, 2010 WL 1748366 (Mar. 12, 2010) (Opening Brief on the Merits); 2010 WL 1843740 (Apr. 12, 2010) (Answer Brief on the Merits); 2010 WL 2661406 (May 3, 2010) (Reply to Answer Brief on the Merits).

[19] Plaintiffs also note that the grant of review warned that the "statement of the issues . . . is intended simply to inform the public and the press of the general subject matter of the case . . . [and] does not necessarily . . . define the specific issues that will be addressed by the court." *See* Pls.' Opp'n 13.

[20] The Fourth District Court of Appeal described its interpretation of the Song-Beverly Act in *Party City* as "not only incorrect, but also unreasonable." *Alvarez*, 202 Cal. App. 4th at 1030.

that the language of the Song-Beverly Act never changed,[21] nor did OfficeMax's conduct. The period at issue merely reflects the time needed for the California Supreme Court to grant review and render an opinion setting forth an authoritative interpretation of the plain language of the statute. With only one reasonable interpretation of a statute, a party cannot persuasively argue that the *Pineda* decision was unforeseeable. *Id.* (citing *Pineda*, *supra*, 51 Cal. 4th at 534).

Based on the foregoing analysis, the Court concludes that the foreseeability factor does not weigh in favor of departing from the rule of retrospective application of judicial decisions.

**B.     CONSIDERATIONS OF PUBLIC POLICY**

Finally, the Court will consider whether public policy justifies a departure from the general rule of retrospective application of judicial decisions. Considerations of public policy include the purpose to be served by the new rule, and the effect of retrospective application on the administration of justice. *Newman*, *supra*, 48 Cal. 3d at 983-84.

*1.     Purpose of the New Rule*

OfficeMax makes essentially two related arguments for why the purpose of the Song-Beverly Act is not furthered by retrospective application of *Pineda*.[22] First, it argues that the prohibited conduct is already complete; it has stopped requesting ZIP code information at the point of sale. Second, OfficeMax contends that its ZIP code capture policy did not violate the consumer privacy concerns underlying the Song-Beverly Act because it never engaged in reverse engineering of ZIP codes to locate a credit card holder's address or telephone number. Def.'s Br. 12.[23] Neither argument is persuasive.

---

[21] The Song-Beverly Act, enacted in 1971, was amended in 1991 to prevent retailers from requesting personal identification. *See Pineda*, *supra*, 51 Cal. 4th at 535-36 (discussing legislative history and purpose).

[22] OfficeMax also argues that no member of the proposed class was injured by OfficeMax's ZIP code capture policy, which Plaintiffs argue is irrelevant to whether *Pineda* is to be applied retrospectively; the remedial nature of the statute presupposes that a violation produces harm beyond that which is compensable and, therefore, the penalty provision is not intended to compensate consumers whose privacy has been violated.

[23] Plaintiffs argue that OfficeMax's conduct did violate the purpose of the Song-Beverly Act, averring that the reason that the Song-Beverly Act prohibits retailers from requesting personal identification information from consumers is two-fold: to protect consumer privacy *and* to prevent retailers from acquiring and using this information for their own business purposes, such as marketing research. Pls.' Opp'n 16 (citing *Pineda*, *supra*, 51 Cal. 4th at 532). Resolution of this issue is not necessary to the determination of whether the purpose of the new rule will be furthered by retrospective or prospective application of *Pineda*.

The Song-Beverly Act imposes fair business practices on businesses for the purpose of protecting the personal privacy of individuals during credit card transactions. *See Pineda*, *supra*, 51 Cal. 4th at 534 (citing *Young v. Bank of America*, 141 Cal. App. 3d 108, 114 (Cal. Ct. App. 1983)). It is a remedial statute, which is to be liberally construed to achieve its legislative purpose. *Young*, *supra*, 141 Cal. App. 3d at 114. The legislature deemed the practice of retailers soliciting and recording information about the cardholder that is unnecessary to the credit card transaction to be an unfair practice which it intended to remedy by enacting the Song-Beverly Act. *See Pineda*, *supra*, 51 Cal. 4th at 534. While the decision to stop a prohibited practice or how a party uses the information it collected when it engaged in the prohibited practice may reflect upon the degree of culpability, and hence, may be pertinent to the amount of penalties assessed for violating the Song-Beverly Act,[24] neither justifies a departure from the usual rule of retrospective application of judicial decisions.

### 2. *Administration of Justice*

Retrospective application of a decision may be unwarranted where there are practical concerns about the effect of the new rule of law on the administration of justice, such as whether granting or denying retroactivity will result in more litigation. *Newman*, *supra*, 48 Cal. 3d at 991-92; *see Li v. Yellow Cab Co.*, 13 Cal. 3d 804, 829 (Cal. 1975) (comparative negligence rule superseding "all-or-nothing" contributory negligence rule given limited retroactive effect, applying only to cases in which trial had not yet begun because holding otherwise would have required trial courts retry essentially all cases that had reached judgment but were not yet final). Although retrospective application of *Pineda* will allow this case to continue, no new lawsuits will be filed based on this decision; lawsuits based on pre-*Pineda* conduct have either already been filed or are time-barred under the one year statute of limitations for Song-Beverly Act claims. *See TJX Companies, Inc. v. Superior Court*, 163 Cal. App. 4th 80, 84-85 (Cal. Ct. App. 2008) (holding Song-Beverly Act subject to one year statute of limitations of Cal. Code Civ. Proc. § 340, not three year statute of limitations of § 338). Any additional expenditure of judicial resources that would result from continuing this case

---

[24] *See Pineda*, *supra*, 51 Cal. 4th at 536 (Song-Beverly Act "does not mandate fixed penalties; rather, it sets maximum penalties of $250 for the first violation and $1,000 for each subsequent violation. Presumably this could span between a penny (or even the proverbial peppercorn) to the maximum amounts authorized by the statute.") (internal citations omitted).

would not justify terminating this case based upon the application of a discredited interpretation of a statute.

OfficeMax argues that it would undermine the administration of justice to permit a lawsuit against it for conduct that it believed was "lawful when committed." Def.'s Br. 13.[25] Plaintiffs counter that "one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." Pls.' Opp'n 16 (quoting *People ex rel. Gallo v. Acuna*, 14 Cal. 4th 1090, 1117 (Cal. 1997). The Court agrees. Indeed, to hold otherwise would encourage parties to ignore the plain meaning of statutes, and thereafter plead innocence.

Based on the foregoing analysis, the Court finds that considerations of public policy do not justify departure from the usual rule of retrospective application of the *Pineda* decision in this case.

## III. CONCLUSION

The Court concludes that considerations of fairness and public policy do not justify departure from the usual rule of retrospective application of judicial decisions. Nor has OfficeMax identified any persuasive reason that would justify a departure from the usual rule. Therefore, the Court will apply the California Supreme Court's decision in *Pineda v. Williams-Sonoma Stores, Inc.*, 51 Cal. 4th 524 (Cal. 2011) retrospectively to OfficeMax in this case.

This Order Terminates Docket Number 44.

**IT IS SO ORDERED.**

Dated: June 25, 2012

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[25] OfficeMax avoids arguing that it did not have "constitutionally adequate notice of proscribed conduct," a due process argument that was considered and rejected in both *Pineda* and *Alvarez*. *E.g. Pineda*, *supra*, 51 Cal. 4th at 536 (concluding that Song-Beverly Act "provides constitutionally adequate notice of proscribed conduct.").