Gene J. Stonebarger, State Bar No. 209461
gstonebarger@stonebargerlaw.com
Richard D. Lambert, State Bar No. 251148
rlambert@stonebargerlaw.com
STONEBARGER LAW, APC
75 Iron Point Circle, Suite 145
Folsom, CA 95630
Telephone:    (916) 235-7140
Facsimile:    (916) 235-7141

H. Tim Hoffman, State Bar No. 049141
hth@hlsblaw.com
Chad A. Saunders, State Bar No. 257810
cas@hlsblaw.com
HOFFMAN LIBENSON SAUNDERS & BARBA
180 Grand Avenue, Suite 1550
Oakland, CA 94612
Telephone:  (510) 763-5700
Facsimile:  (510) 835-1311

*Attorneys for Plaintiffs and the Class*

STONEBARGER LAW
A Professional Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| NANCY DARDARIAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OFFICEMAX NORTH AMERICA, INC., an Ohio corporation,<br><br>Defendant. | Case No. 4:11-cv-00947 YGR<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:  June 18, 2013<br>Time: 2:00 p.m.<br>Courtroom:  5 – 2nd Floor<br>Judge: Hon. Yvonne Gonzalez Rogers |
| NATHAN THOMS, individually and on behalf of himself and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OFFICEMAX NORTH AMERICA, INC., an Ohio corporation; and DOES 2 through 50, inclusive,<br><br>Defendants. | Case No. 4:11-cv-02233 YGR |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................... 1

II.    PROCEDURAL HISTORY ...................................................................................... 2

       A.  The Dardarian Action ..................................................................................... 2

       B.  The Thoms Action .......................................................................................... 2

       C.  Court's Order Relating the Dardarian and Thoms Actions ........................... 3

       D.  Settlement Negotiations ................................................................................. 3

III.   BASIC ELEMENTS OF THE PROPOSED SETTLEMENT .................................. 4

       A.  Class Benefits ................................................................................................. 4

       B.  Class Notice .................................................................................................... 5

               1.  In-Store Notice ...................................................................................... 5

               2.  Settlement Website Notice .................................................................... 5

               3.  E-mail Notice ........................................................................................ 5

       C.  Completing Claim Forms ............................................................................... 5

       D.  Right to Object ............................................................................................... 6

       E.  Right to Elect Not to Participate in the Settlement ........................................ 6

       F.  Incentive Payments to Class Representative Dardarian ................................. 6

       G.  Payment to Plaintiff Thoms Not Serving as Class Representative ................ 7

       H.  Attorneys' Fees and Costs ............................................................................. 7

       I.  Settlement Implementation Costs ................................................................... 7

IV.    THE PROPOSED SETTLEMENT IS FAIR AND SHOULD
       RECEIVE PRELIMINARY APPROVAL .............................................................. 8

       A.  The Proposed Settlement Meets All Criteria Establishing Fairness ............. 8

               1.  Strength of Plaintiffs' Case ................................................................... 8

2. The Risk, Expense, Complexity, and Duration of Further Litigation and the Risk of Maintaining Class Action Status Through Trial.................................................................... 11

3. The Benefits Offered in Settlement ................................................ 12

4. The Extent of Discovery and Stage at Which Settlement Is Reached ............................................................................. 12

5. Experience and Views of Counsel .................................................. 13

6. Presence of Governmental Participants ........................................ 13

7. The Proposed Settlement Resulted from Serious, Informed and Non-Collusive Arm's-Length Negotiations.......................... 13

V.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED ...................... 14

A. The Settlement Satisfies the Requirements of Rule 23(a) ........................ 14

1. Numerosity .............................................................................. 15

2. Commonality............................................................................ 16

3. Typicality ............................................................................... 15

4. Adequacy ............................................................................... 16

B. The Settlement Class Should be Certified Under Rule 23(b)(3).............................. 16

1. Common Questions Predominate Over Individual Issues ............................ 17

2. A Class Action is the Superior Method to Settle this Controversy .......................................................................... 18

VI.   THE PROPOSED CLASS NOTICE PROGRAM IS APPROPRIATE, AND CLASS NOTICE SHOULD BE APPROVED ...................................................... 19

VII.  IF THE SETTLEMENT IS PRELIMINARILY APPROVED, THE COURT SHOULD SCHEDULE A HEARING ON FINAL SETTLEMENT APPROVAL................................................................................. 20

VIII. CONCLUSION................................................................................. 20

1

## **TABLE OF AUTHORITIES**

2

**Federal Cases**

3

*Adams v. Inter-Con Sec. Sys. Inc.,*

4

   No. C-06-5428 MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007)........................................ 14

5

*Amchem v. Windsor,*

6

   521 U.S. 591(1997)........................................................................................................ 17, 18

7

*Cent. Hanover Bank & Trust Co.,*

8

   339 U.S. 306 (1950).............................................................................................................. 19

9

*Churchill Vill., L.L.C. v. GE,*

10

   361 F.3d 566 (9th Cir. 2004) ................................................................................................ 19

11

*Class Plaintiffs v. City of Seattle,*

12

   955 F.2d 1268 (9th Cir. 1992) ............................................................................................... 8

13

*Deposit Guar. Nat'l Bank v. Roper,*

14

   445 U.S. 326 ......................................................................................................................... 18

15

*Detroit v. Grinnell Corp.,*

16

   495 F.2d 448 (2nd. Cir. 1974) .............................................................................................. 10

17

*Eisen v. Carlisle & Jacquelin,*

18

   417 U.S. 156 (1974)............................................................................................................. 19

19

*Gen. Tel. Co. of Sw. v. Falcon,*

20

   457 U.S. 147 (1982)............................................................................................................. 17

21

*Hanlon v. Chrysler Corp.,*

22

   150 F.3d 1011 (9th Cir. 1998) .................................................................................... passim

23

*Hanon v. Dataproducts Corp.,*

24

   976 F.2d 497 (9th Cir. 1992) ................................................................................................ 15

25

*In re Compact Disc Minimum Advertised Price Antitrust Litig.,*

26

   216 F.R.D. 197 (D. Me. 2003)............................................................................................. 20

27

/ / /

28

STONEBARGER LAW
A Professional Corporation

*In re Corrugated Container Antitrust Litig.,*
    643 F.2d 195 (5th Cir. 1981) ........................................................................ 12

*In re Employee Benefit Plans Sec. Litig.,*
    No. 3-92-708, 1993 WL 330595 (D. Minn. June 2, 1993) ...................... 13

*In re First Alliance Mortg. Co.,*
    471 F.3d 977 (9th Cir. 2006) ...................................................................... 15

*In re Immune Response Secs. Litigation,*
    497 F. Supp. 2nd 1166 (S.D. Cal. 2007)............................................... 8, 10

*In re Indep. Energy Holdings PLC,*
    No. 00 Civ. 6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ............................ 14

*In re Mego Financial Corp. Sec. Litigation,*
    213 F.3d [454] [(9th Cir. 2000)] ................................................................... 8

*In re Mercury Interactive Corp. Sec. Litig.,*
    618 F.3d 988 (9th Cir. 2010) ........................................................................ 7

*In re Warner Commc'ns Sec. Litig.,*
    618 F. Supp. 735 (S.D.N.Y. 1985) ........................................................... 14

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,*
    244 F.3d 1152 (9th Cir. 2001) ................................................................... 17

*Manchaca v. Chafer,*
    927 F. Supp. 962 (E.D. Tex. 1996) ............................................................ 14

*Mendoza v. Tucson Sch. Dist. No. 1,*
    623 F.2d 1338 (9th Cir. 1980) ................................................................... 19

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004)................................................................ 13

*Officers of Justice v. Civil Service Com.,*
    688 F.2d 615 (9th Cir. 1982) ...................................................................... 10

*Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,*
    390 U.S. 414, 88 S. Ct. 1157 L. Ed. 2d 1 (1968)..................................... 8

STONEBARGER LAW
A Professional Corporation

*Staton v. Boeing,*

    327 F.3d 938 (9th Cir. 2003) ................................................................. 16

*Torrisi v. Tucson Elec. Power Co.,*

    8 F.3d 1370 (9th Cir. 1993) ..................................................................... 8

*Valentino v. Carter-Wallace, Inc.,*

    97 F.3d 1227 (9th Cir. 1996) ................................................................. 18

*Wiener v. Dannon Co., Inc.,*

    255 F.R.D. 658 (C.D. Cal. 2009) ...................................................... 16, 18

*Zinser v. Accufix Research Inst., Inc.,*

    253 F.3d 1180 (9th Cir. 2001) ............................................................... 18

**State Cases**

*7-Eleven Owners for Fair Franchising v. Southland Corp.,*

    85 Cal.App.4th 1135 (2000) .................................................................. 10

*Chavez v. Netflix, Inc.,*

    162 Cal.App.4th 43 (2008) .................................................................... 12

*Florez v. Linens 'N Things, Inc.,*

    108 Cal.App.4th 447 (2003) .................................................................... 9

*Pineda v. Williams-Sonoma Stores, Inc.,*

    51 Cal.4th 524 (2011) ................................................................ 1, 9, 10, 11

*The TJX Companies, Inc. v. Superior Court,*

    163 Cal.App.4th 80 (2008) ..................................................................... 9

*Vasquez v. Superior Court,*

    4 Cal.3d 800 (1971) ............................................................................. 18

*Young v. Bank of Am.,*

    141 Cal.App.3d 108 (1983) .................................................................... 9

**Federal Statutes**

28 U.S.C. § 1715(b) ................................................................................. 13

STONEBARGER LAW
A Professional Corporation

v
TABLE OF AUTHORITIES

**State Statutes**

Cal. Civ. Code Section 1747.08 ........................................................................... passim

**Federal Rules**

Fed. R. Civ. P. 23 ................................................................................. 14, 15, 16

**Miscellaneous Authorities**

7A C.A. Wright, A.R. Miller, & M. Kane,

    *Federal Practice & Procedure* § 1777 (2d ed. 1986) ................................... 17

Assem. Floor Analysis, 3d Reading of Assem. Bill No. 2533

    (1995-1996 Reg. Sess.) May 15, 1996 ...................................................... 9

Dept. Consumer Affairs,

    Analysis of Assem. Bill No. 1316 (1995-1996 Reg. Sess.) ........................... 9

*Fed Prac. & Proc.*, § 1778 ......................................................................... 17

*Newberg on Class Actions*, § 11.41 (4th ed. 2007) ....................................... 13

Off. of Sen. Floor Analyses, 3d Reading Analysis of Assem. Bill No. 1316

    (1995-1996 Reg. Sess.) July 18, 1995 ...................................................... 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STONEBARGER LAW
A Professional Corporation

## I.   **INTRODUCTION**

This putative class action was brought by Plaintiffs Nancy Dardarian ("Dardarian") and Nathan Thoms ("Thoms") on behalf of themselves and all other consumers who made a consumer credit card purchase at a California OfficeMax North America, Inc. ("OfficeMax" or "Defendant") retail store  between March 1, 2010 and February 22, 2011 and whose ZIP codes were requested and recorded by an OfficeMax employee.  Excluded are persons from whom OfficeMax requested and recorded a ZIP code for a special purpose incidental, but related to the consumer credit card transaction, including but not limited to, shipping, delivery, servicing, installation, special orders, customer loyalty program applications, and OfficeMax-branded credit card applications.

OfficeMax is a retailer that owns and operates stores throughout California.  This action arises from OfficeMax's alleged violation of the Song-Beverly Credit Card Act, codified as California Civil Code section 1747.08 ("Section 1747.08"), by and through its alleged practice of requesting and recording personal identification information from its customers using credit cards at OfficeMax's retail stores in California.

OfficeMax denies any claim of wrongdoing and asserts dozens of affirmative and separate defenses to liability and class certification issues.  Foremost, OfficeMax argues that it did not violate the Song Beverly Credit Card Act or any other laws relating to its alleged conduct.  Further, on February 10, 2011 – the same day as the California Supreme Court's decision in *Pineda v. William-Sonoma* Stores, Inc. – OfficeMax immediately informed all California stores to stop requesting ZIP codes at the point-of-sale.  Prior thereto, OfficeMax claims to have had relied on multiple California Appellate Court decisions and a Superior Court decision in a lawsuit in which it was a party, holding that ZIP code information was not personal identification information within the meaning of the Song-Beverly Credit Card Act.  Moreover, OfficeMax never sold or reverse engineered the ZIP codes recorded at the point-of-sale.

After extensive arms-length negotiations, including a full day mediation session with Judge David A. Garcia (Ret. San Francisco Superior Court Judge) of JAMS and multiple settlement conferences with Magistrate Judge Nandor J. Vadas, plaintiffs Nathan Thoms and

Nancy Dardarian (collectively, "Plaintiffs") and OfficeMax (collectively, the "Parties") have entered into a Class Action Settlement Agreement and Release (the "Settlement Agreement," a true and correct copy of which is filed concurrently and attached to the Declaration of Gene J. Stonebarger ("Stonebarger Decl.") as **Exhibit '1'**).

Plaintiffs' counsel believes that the proposed settlement is fair, reasonable and adequate; therefore, Dardarian now moves the Court for an order: (1) preliminarily approving the Settlement Agreement as being fair, reasonable, and adequate; (2) provisionally certifying the Class under Federal Rule of Civil Procedure 23 for settlement purposes only; (3) preliminarily approving the form, manner, and content of the Class Notices and Claim Form; (4) appointing Plaintiff Nancy Dardarian as the Class Representative; (5) appointing the law firms of Stonebarger Law, APC and Hoffman Libenson Saunders & Barba as counsel for the Class; and (6) setting the date and time of the Fairness Hearing.

## II.   **PROCEDURAL HISTORY**

### A.   **The Dardarian Action**

On or about March 1, 2011, Plaintiff Nancy Dardarian filed a class action complaint in the United States District Court for the Northern District of California entitled *Nancy Dardarian v. OfficeMax Incorporated*, Case No. 4:11-cv-000947-SBA, alleging violations of the Song-Beverly Credit Card Act of 1971, California Civil Code section 1747.08, *et seq.* (the "Dardarian Action").

### B.   **The Thoms Action**

On or about March 4, 2011, Plaintiff Nathan Thoms filed a class action complaint in the Superior Court of the State of California, County of San Francisco entitled *Nathan Thoms v. OfficeMax Incorporated, et al.*, Case No. CGC-11-508828, alleging violations of the Song-Beverly Credit Card Act of 1971, California Civil Code section 1747.08, *et seq.* (the "Thoms Action").

On May 6, 2011, OfficeMax removed the Thoms Action to the United States District Court for the Northern District of California, where it was assigned the case number 3:11-cv-02233-WHA.

STONEBARGER LAW
A Professional Corporation

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

C.  **Court's Order Relating the Dardarian and Thoms Actions**

On or about July 27, 2011, the Thoms Action was ordered related to the Dardarian Action and reassigned to the Honorable Saundra Brown Armstrong for all further proceedings.  The Dardarian Action and the Thoms Action were consolidated for all purposes as *Nancy Dardarian v. OfficeMax North America, Inc.*, Case No. 4:11-cv-00947-SBA.  On December 15, 2011, Plaintiffs filed a Consolidated Complaint.

On January 18, 2012, the Consolidated Action was reassigned to Judge Yvonne Gonzalez Rogers for all purposes with the Case Number 4:11-cv-00947-YGR (the "Action").

D.  **Settlement Negotiations**

Plaintiffs engaged in formal discovery and analyzed the relevant legal issues with regards to the claims in, and potential defenses to, the Action.  Stonebarger Decl. at ¶3.  Plaintiffs also considered the uncertainties of trial and the benefits to be obtained under the proposed Settlement Agreement and have considered the costs, risks, and delays associated with the continued prosecution of this time-consuming litigation and the likely appeals of any rulings in favor of either Plaintiffs or Defendant.  *Id.*  The Parties believe their respective positions in the Action are meritorious.  *Id.*  However, due to the uncertainties and expense of protracted litigation, Plaintiffs decided it is in the best interest of Plaintiffs and the Class to explore mutual resolution of the Action.  *Id.*

Accordingly, on February 21, 2012, the Parties participated in an all-day mediation conducted by the Honorable David Garcia (Ret.) of JAMS, an experienced mediator.  *Id.* at ¶4.  On October 25, 2012, November 30, 2012, and January 30, 2013, the Parties participated in Settlement Conferences before Magistrate Judge Nandor J. Vadas, and on November 14, 2012, December 18, 2012, and January 2, 2013, the Parties participated in telephone conferences before Judge Vadas.  *Id.*  As a result of these settlement conferences and telephone conferences, the Parties ultimately agreed on the material terms to resolve this Action. The terms of the settlement between the Parties are embodied in the Settlement Agreement.  *Id.* at ¶2; Exh. '1'.

/ / /

/ / /

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

STONEBARGER LAW
A Professional Corporation

III.    **BASIC ELEMENTS OF THE PROPOSED SETTLEMENT**

A.    **Class Benefits**

As part of the proposed settlement, $600,000 in Merchandise Vouchers will be distributed to potential Class members. Without the necessity of any claims process, OfficeMax customers who make a purchase in an OfficeMax California retail store will receive a Merchandise Voucher with a value of five dollars ("$5 Merchandise Voucher") as set forth in the Settlement Agreement.  Specifically, within five (5) days of the beginning of the OfficeMax fiscal quarter starting at least seventy-two (72) days after the Court enters Final Order and Judgment, OfficeMax will begin to distribute one hundred and twenty thousand (120,000) $5 Merchandise Vouchers, monetary value totaling $600,000, to customers who make purchases in OfficeMax California retail stores. *See* Settlement Agreement § 1.12 and § 2.3(b).

Additionally, all Class members who submit a valid, timely claim will receive a Merchandise Voucher with a value of ten dollars ("$10 Merchandise Voucher").  *See* Settlement Agreement § 2.3(a).

The $10 Merchandise Vouchers have a 90-day redemption period. The $5 Merchandise Vouchers will be valid beginning no later than thirty (30) days after the start of such OfficeMax fiscal quarter and continuing until the end of the OfficeMax fiscal quarter in which they are issued.  Both the $10 and $5 Merchandise Vouchers are transferable with standard terms, including (i) one Merchandise Voucher may be used per customer per transaction; (ii) the Merchandise Voucher cannot be combined with any other Merchandise Voucher, coupon, offer, discount, OfficeMax Customer Perks, and/or Retail Connect pricing; (iii) the Merchandise Voucher is valid on regular, sale, promotional and/or clearance priced items; (iv) the Merchandise Voucher is not valid on purchases of gift cards, general-use prepaid cards, phone cards, Virgin Mobile devices, or U.S. postage stamps; (v) the Merchandise Voucher is not valid on prior purchases or for credit card payments; (vi) the Merchandise Voucher is void if copied, sold, purchased, taxed and where prohibited; (vii) the original Merchandise Voucher must be surrendered at time of purchase; (viii) the Merchandise Voucher is not redeemable for cash and no cash or credit back; and (ix) the Merchandise Voucher is only redeemable at a California

1   OfficeMax retail location.

2       **B.     Class Notice**

3       The Notice of Class Action Settlement will be provided through the following methods:

4           **1.     *In-Store Notice***

5       Within forty-two (42) days after the Court enters an order granting Preliminary Approval

6   of the Settlement, OfficeMax will post or place, for thirty (30) days, a tear-away written notice

7   (substantially similar to the In-Store Notice attached as Exhibit 'C') at customer service near the

8   point of sale in its California retail stores. *See* Settlement Agreement § 3.2(a).

9           **2.     *Settlement Website***

10      Within fourteen (14) business days after the Court enters an order granting Preliminary

11  Approval of the Settlement, the Settlement Administrator will establish an Internet-based website

12  and post a detailed notice (substantially similar to the Full Notice attached as Exhibit 'D') and the

13  claim form (substantially similar to the Claim Form attached as Exhibit 'A'). *See* Settlement

14  Agreement § 3.2(b).

15          **3.     *E-mail Notice***

16      Within forty-two (42) days after the Court enters an order granting Preliminary Approval

17  of the Settlement, OfficeMax will send electronic mail communications (substantially similar to

18  the E-Mail Notice attached as Exhibit 'B') to all of its MaxPerks members for whom it possesses

19  a valid e-mail address and who engaged in a credit card purchase transaction in one of its

20  California retail stores between March 1, 2010 and February 22, 2011 wherein a five digit ZIP

21  code was recorded. The electronic message will notify the recipient of the proposed settlement

22  and that he or she may be a Class member who is entitled to make a claim. The electronic

23  message will include a link to the Settlement Administrator's settlement website, in plain text

24  format, and will instruct the recipient to copy and paste the link into their web browser to view

25  the full notice and to submit a claim. *See* Settlement Agreement § 3.2(c).

26      **C.     Completing Claim Forms**

27      To receive a $10 Merchandise Voucher, Class members must complete and timely submit

28  a claim form to the Settlement Administrator within forty-five (45) days after the deadline set by

STONEBARGER LAW
A Professional Corporation

the Court for OfficeMax to provide In-Store and E-Mail Notice.  Timeliness of a Claim Form will be determined by the date postmarked by the postal service or other expedited delivery service, or, if submitted electronically through the Settlement Website, the date the Settlement Administrator receives the claim form, as evidenced by the transmission receipt.  *See* Settlement Agreement § 3.4.

> **D.**     **Right to Object**

Any Class member who wishes to object to the settlement must file a signed, written objection with the Court and serve copies on Class Counsel and OfficeMax's counsel within the deadline set by the Court.  *See* Settlement Agreement § 3.5.

> **E.**     **Right to Elect Not to Participate in the Settlement**

Class members who wish to request to be excluded from or opt out of the settlement must submit a written, signed Request for Exclusion to the Settlement Administrator within the deadline set by the Court. The Request for Exclusion must set forth, among others, the date and location of any transaction(s) in which the Class member used a consumer credit card to make a purchase at a California OfficeMax retail store between March 1, 2010 and February 22, 2011. Each Class member who does not submit a Request for Exclusion will be deemed to participate in the settlement and all releases provided in the Settlement Agreement.  *See* Settlement Agreement § 3.8.

> **F.**     **Incentive Payments to Class Representative Dardarian**

After Dardarian and OfficeMax agreed to the Class benefits, OfficeMax agreed that it would not object to a request by Dardarian for the Court's approval of an award of an incentive payment of $4,500.00 in recognition of the risk to her as the Class representative in commencing the Action, both financial and otherwise, and the amount of time and effort spent by Dardarian as the Class representative.  *See* Settlement Agreement § 2.5.

Accordingly, in the event this Settlement Agreement receives Final Judicial Approval, OfficeMax will pay an incentive award of $4,500.00 to proposed Class Representative Dardarian.  *See* Settlement Agreement § 2.5.

/ / /

STONEBARGER LAW
A Professional Corporation

1    Dardarian will provide further supporting documentation and briefing regarding the

2    agreed upon award for Dardarian's incentive payment in her Motion for an Award of Attorneys'

3    Fees and Costs to Class Counsel and for Incentive Award to the Class Representative.

4    **G.    Payment to Plaintiff Thoms Not Serving as Class Representative**

5    In consideration for the General Release of Plaintiff Thoms, OfficeMax agrees to pay

6    $1,750 to resolve his individual claims. *See* Settlement Agreement § 2.6.

7    **H.    Attorneys' Fees and Costs**

8    After Dardarian and OfficeMax reached an agreement as to the Class benefits, the Parties

9    had significant settlement discussions regarding Plaintiffs' request for attorneys' fees and costs,

10   including discussions with Judge Vadas. The Parties eventually agreed that Plaintiffs' counsel

11   can apply for fees and costs subject to a floor of $200,000 and a ceiling of $500,000. In this

12   regard, Plaintiffs agreed not to petition the Court for more than $500,000 in attorneys' fees and

13   costs. OfficeMax, likewise, agreed that it would not object to a request by Plaintiffs for the

14   Court's approval of an award of attorneys' fees and costs in the amount of up to $200,000.

15   OfficeMax, however, preserved its right to oppose any application for attorneys' fees and costs

16   in excess of $200,000. *See* Settlement Agreement § 2.4.

17   Accordingly, in the event the Parties' Settlement Agreement receives Final Judicial

18   Approval, OfficeMax will pay proposed Class Counsel's attorneys' fees and costs in the amount

19   ordered by the Court, separate and apart from any benefits to the Class. *Id.*

20   Plaintiffs will provide further supporting documentation and briefing regarding the

21   awards for attorneys' fees and costs in their Motion for an Award of Attorneys' Fees and Costs to

22   Class Counsel and for Incentive Awards to the Class Representatives. Plaintiffs' Motion for

23   attorneys' fees will be filed prior to the deadline for Class members to object to the Settlement

24   Agreement. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010).

25   **I.    Settlement Implementation Costs**

26   OfficeMax will bear all reasonable costs of retaining the Settlement Administrator to

27   effectuate the settlement contemplated in the Settlement Agreement and providing Notice to the

28   Class. *See* Settlement Agreement § 2.7.

STONEBARGER LAW
A Professional Corporation

STONEBARGER LAW
A Professional Corporation

IV.   **THE PROPOSED SETTLEMENT IS FAIR AND SHOULD RECEIVE PRELIMINARY APPROVAL**

A.   **The Proposed Settlement Meets All Criteria Establishing Fairness.**

As explained by the court in *In re Immune Response Secs. Litigation*, 497 F. Supp. 2nd 1166, 1169-1170 (S.D. Cal. 2007):

"Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable.' *Officers for Justice*, 688 F.2d at 625; see also *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). When determining whether approval of a settlement is warranted, courts consider 'several factors which may include, among others, some or all of the following: [1] the strength of Plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.' *Torrisi*, 8 F.3d at 1375; see also *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Further, '[t]o survive appellate review, the district court must show it has explored comprehensively all [fairness] factors.' *Hanlon*, 150 F.3d at 1026 (citing *Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 434, 88 S. Ct. 1157, 20 L. Ed. 2d 1 (1968)). Finally, 'the settlement may not be the product of collusion among the negotiating parties.' [*In re*] *Mego Financial Corp. Sec. Litigation*, 213 F.3d [454] at 458 [(9th Cir. 2000)] (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992))."[1]

1.   *Strength of Plaintiffs' Case*

Plaintiffs assert that OfficeMax violated California Civil Code section 1747.08 in that as part of processing its customers' consumer credit card transactions at a California OfficeMax retail store, OfficeMax requested and recorded customers' ZIP codes. California Civil Code section 1747.08, in its present form, states in relevant part:

(a)  Except as provided in subdivision (c), no person, firm, partnership, association, or corporation which accepts credit cards for the transaction of business shall do either of the following:

(2)  *Request*, or require as a condition to accepting the credit card as payment in full or in part for goods or services, *the cardholder to provide personal identification information, which the person, firm, partnership, association, or corporation accepting the credit card writes, causes to be written, or otherwise records upon the credit card transaction form or otherwise.*" Cal. Civ. Code § 1747.08(a)(2) (emphasis added).

---

[1]  The guidance of Rule 23(e)(2) of the Federal Rules of Civil Procedure on the approval of a class action settlement is that it must be "fair, reasonable, and adequate."

California Civil Code section 1747.08 is part of the Song-Beverly Credit Card Act and was designed to promote consumer protection; the Act imposes fair business practices for the protection of consumers. *Florez v. Linens 'N Things, Inc.*, 108 Cal. App. 4th 447, 450 (2003) (*citing Young v. Bank of Am.*, 141 Cal. App. 3d 108 (1983)).  Plaintiffs contend that Section 1747.08 was originally enacted as a response to two principal privacy concerns:  first, that with increased use of computer technology, very specific and personal information about a consumer's spending habits was being made available to anyone willing to pay for it; and second, that acts of harassment and violence were being committed by store clerks who obtained customers' phone numbers and addresses.  *Id.* at 452; *see also* Off. of Sen. Floor Analyses, 3d Reading Analysis of Assem. Bill No. 1316 (1995-1996 Reg. Sess.) July 18, 1995, p. 3.

Additionally, Plaintiffs contend the statute was intended to keep the customer's credit card number separate and apart from his or her personal information such as address, telephone number, birth date, etc., in order to prevent thieves from obtaining both at the same time (*i.e.*, "dumpster diving") and engaging in credit card fraud, usually over the telephone.  Assem. Floor Analysis, 3d Reading of Assem. Bill No. 2533 (1995-1996 Reg. Sess.) May 15, 1996, pp. 1-2. When drafting 1747.08, the Legislature was well aware that anyone with access to a consumer's credit card number and address could access their credit history, open credit in their name, or charge something in their name.  Dept. Consumer Affairs, Analysis of Assem. Bill No. 1316 (1995-1996 Reg. Sess.) p. 1.

The California Supreme Court issued its unanimous opinion in *Pineda v. Williams-Sonoma Stores, Inc.*, 51 Cal. 4th 524 (2011), confirming that ZIP codes are "personal identification information" as defined in section 1747.08.  *Pineda*, 51 Cal. 4th at 524.  Pursuant to California Civil Code section 1747.08(e), a violator of the statute shall be liable for a civil penalty of up to $250.00 for the first violation and up to $1,000.00 for each subsequent violation of the statute.  Cal. Civ. Code § 1747.08(e).  Although a violator of the statute is subject to a mandatory civil penalty, the amount of the civil penalty to be imposed against a Defendant is discretionary.  Civil penalties could be as little as a penny or the "proverbial peppercorn."  *See The TJX Companies, Inc. v. Superior Court*, 163 Cal.App.4th 80, 86-87 (2008).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

STONEBARGER LAW
A Professional Corporation

OfficeMax denies any wrongdoing in this case. OfficeMax contends that requests for ZIP codes by its employees, and the customers' subsequent responses, were completely voluntary, and therefore, not unlawful. After the *Pineda* Court held that ZIP code information is personal identification information within the meaning of the Act, OfficeMax immediately instructed all California stores to end requesting and recording ZIP codes at the point-of-sale. OfficeMax contends that it never requested ZIP codes at the point-of-sale in its California retail stores for direct marketing purposes or to sell such information to third parties. OfficeMax has never reverse engineered a customer's name and ZIP code to obtain their full mailing address or telephone number. Rather, OfficeMax requested and recorded ZIP codes to evaluate store locations and for placement of Sunday newspaper pre-print inserts. In addition, OfficeMax claims to have extensive measures implemented to protect customer information.

In determining whether the settlement is fair, the Court has to assess whether the relief offered by the settlement is reasonable, in light of the claims to be released. At this stage, the Court need only to conduct a *prima facie* review of the relief and notice provided by the settlement to determine whether notice should be sent to the settlement class members. *In re Immune Response*, 497 F.Supp.2d at 1172. It is simply "not appropriate for the court to attempt to settle these questions of law and fact: '[T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor [the appellate court] is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.'" *Id.* (citing *Officers of Justice v. Civil Service Com.*, 688 F.2d 615, 625 (9th Cir. 1982)).

In sum, "the merits of the underlying class claims are not a basis for upsetting the settlement of a class action; the operative word is 'settlement.'" *7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal.App.4th 1135, 1150 (2000). Even "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2nd. Cir. 1974).

STONEBARGER LAW
A Professional Corporation

STONEBARGER LAW
A Professional Corporation

1       Plaintiffs believe that this case is strong in light of the California Supreme Court's

2   unanimous decision in *Pineda* confirming that "requesting and recording a cardholder's ZIP

3   codes, without more, violates the [California] Credit Card Act." *Pineda*, 51 Cal.4th at 527-28.

4   The outcome of this case is uncertain, however, and if OfficeMax was to prevail on its arguments

5   in its Opposition to Dardarian's pending Motion for Class Certification, the Class would obtain

6   little or nothing through litigation.  Even if Plaintiffs were to convince the Court to certify the

7   Class after a contested motion for class certification and eventually establish liability at trial,

8   then the amount of the civil penalty to be awarded (somewhere between a penny and $1,000)

9   would rest within the sound discretion of the trial court.  *Id.* at 536.  As such, if Plaintiffs and the

10  Class succeed at trial, the amount of the civil penalties to be awarded by the Court is uncertain.

11  OfficeMax maintains that penalties, if any, should be the proverbial peppercorn as OfficeMax

12  claims that it has always sought to comply with the Song-Beverly Credit Card Ac, did not use

13  ZIP codes requested and recorded at the point-of-sale to invade the privacy of its customers, and

14  the putative class members did not suffer any injury.

    **2.**    ***The Risk, Expense, Complexity, and Duration of Further Litigation and the Risk of Maintaining Class Action Status Through Trial***

17      The settlement takes into account the risk, expense, and complexity of further litigation.

18  Plaintiffs have retained an expert in the credit card industry and would be required to retain

19  additional experts to conduct forensic analysis of the recording and storage of OfficeMax's

20  customer information, as well as experts to testify to the value of the collected information.

21  Stonebarger Decl. at ¶5.

22      OfficeMax would vigorously oppose Dardarian's attempt to get a class certified and has

23  retained an expert to defeat certification and the Class claims, and an expert affidavit has already

24  been filed with the Court.  *Id.*

25      Additional time consuming and expensive law and motion proceedings would be

26  necessary to narrow or eliminate the claims and defenses both at the certification stage and the

27  trial stage.  The time and expense of further litigation could potentially negatively impact

28  OfficeMax's business operations and would interfere with potential Class members' opportunity

to obtain benefits promptly. Accordingly, the settlement at this stage in the litigation benefits the Court, the Parties, and the Class. *Id.*

### 3.      *The Benefits Offered in Settlement*

Each Class member is eligible to receive a $10 *and* $5 Merchandise Voucher. Such recovery to the proposed Settlement Class is *without* any risk of the Class not being certified and is without any risk that Plaintiffs will not prevail as to liability and/or in recovering substantial penalties. While the dollar value of the settlement per Class member may be relatively small, it must be remembered that any allegation of alleged harm may be difficult to prove. *See Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43, 55 (2008) (Six dollar benefit provided by the settlement - free DVD rentals - directly addresses the harm alleged in the complaint. While the dollar value of the settlement per class member is small, Plaintiffs would have encountered considerable difficulties in trying to prove their amount.).

### 4.      *The Extent of Discovery and Stage at Which Settlement Is Reached*

It is *not* the law that a class action cannot be settled until the last particle of discovery has been completed and analyzed. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981) ("'It is true that very little formal discovery was conducted and that there is no voluminous record in the case. However, the lack of such does not compel the conclusion that insufficient discovery was conducted'") (emphasis omitted).

Through mutual exchange of formal discovery, and depositions of OfficeMax representatives under Rule 30(b)(6), Plaintiffs believe they have discovered both the evidence needed to establish their *prima facie* cases and to address the full range of contentions advanced by OfficeMax. In that process, among other things, OfficeMax provided Plaintiffs with information relating to its policies and practices regarding the collection of personal identification information.. As such, while OfficeMax disagrees with Plaintiffs' assessment of the evidence produced, OfficeMax agrees that counsel for each of the Parties has sufficient information to assess the strengths, weaknesses, and likely expense of taking this case to trial. Stonebarger Decl. at ¶6.

STONEBARGER LAW
A Professional Corporation

STONEBARGER LAW
A Professional Corporation

### 5.   *Experience and Views of Counsel*

Class Counsel has extensive experience litigating consumer class actions and has litigated numerous cases based upon violations of the Song-Beverly Credit Card Act.  Stonebarger Decl. at ¶¶10-11, Exh. '2'.  Class Counsel has represented millions of consumers in numerous consumer class actions asserting violations of the Song-Beverly Credit Card Act of 1971.  *Id.*

Based upon Class Counsel's substantial experience, Class Counsel believes the present settlement is in the best interest of the Class members due to the significant recovery to the Class members, without any risk of the Class not being certified and not prevailing as to liability and/or civil penalties.  *Id.* at ¶12.

### 6.   *Presence of Governmental Participants*

Although there is no governmental entity participating in this matter as of this time, full and complete notice is being provided to all appropriate state and federal authorities.  OfficeMax will provide such notice, which will include all appropriate information and documents required by CAFA (28 U.S.C. § 1715(b)) including:  (1) all complaints filed in the Action, (2) the proposed Settlement Agreement, and (3) settlement notification to Class members and benefit election procedure.  As such, the fact of that notice and the opportunity governmental entities will have to take part in the final approval process weigh in favor of preliminary approval.

### 7.   *The Proposed Settlement Resulted from Serious, Informed and Non-Collusive Arm's-Length Negotiations*

The requirement that a settlement be fair is designed to protect against collusion among the parties.  *See Hanlon*, 150 F.3d at 1026.  Typically, "[t]here is a presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented for Court approval."  *Newberg on Class Actions*, § 11.41 (4th ed. 2007); *see also Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are the most closely acquainted with the facts of the underlying litigation."); *In re Employee Benefit Plans Sec. Litig.*, No. 3-92-708, 1993 WL 330595, at *5 (D. Minn. June 2, 1993) ("[t]he court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement").

1    Here, the Parties engaged the services of Judge Garcia of JAMS and attended multiple

2  settlement conferences before Judge Vadas.  Stonebarger Decl. ¶4.  Before the mediation and the

3  settlement conferences, Class Counsel exchanged information through formal discovery and

4  obtained information from OfficeMax relating to information necessary to evaluate the potential

5  amount of civil penalties.  *Id.*  Thus, Plaintiffs and their counsel, who are experienced in

6  prosecuting this type of complex class action, had "a clear view of the strengths and weaknesses"

7  of their cases and were in a strong position to make an informed decision regarding the

8  reasonableness of a potential settlement.  *See, e.g., In re Warner Commc'ns Sec. Litig.*, 618 F.

9  Supp. 735, 745 (S.D.N.Y. 1985); *see also Manchaca v. Chafer,* 927 F. Supp. 962, 967 (E.D. Tex.

10  1996).

11    The fact that the Settlement Agreement was facilitated by an experienced mediator and a

12  Magistrate Judge confirms that it is not collusive.  *See, e.g., Adams v. Inter-Con Sec. Sys. Inc.*,

13  No. C-06-5428 MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) ("The assistance of an

14  experienced mediator in the settlement process confirms that the settlement is non-collusive.");

15  *In re Indep. Energy Holdings PLC*, No. 00 Civ. 6689 (SAS), 2003 WL 22244676, at *4

16  (S.D.N.Y. Sept. 29, 2003) ("the fact that the Settlement was reached after exhaustive arm's-

17  length negotiations, with the assistance of a private mediator experienced in complex litigation,

18  is further proof that it is fair and reasonable").  Further, the nature of the subsequent negotiations

19  between the Parties, the experience of counsel in this area, and the fair result reached are all

20  evidence of the arms-length nature of the negotiations that lead to the Settlement Agreement.

21  **V.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED**

22      **A.    The Settlement Satisfies the Requirements of Rule 23(a)**

23    Rule 23(a) enumerates four prerequisites for class certification: (1) numerosity; (2)

24  commonality; (3) typicality; and (4) adequacy.  Plaintiffs believe that each of these requirements

25  is met.  OfficeMax stipulates to certification of the Class for settlement purposes only.

26      **1.    *Numerosity***

27    Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is

28  impracticable."  Fed. R. Civ. P. 23(a); *Wiener v. Dannon Co., Inc.,* 255 F.R.D. 658, 664 (C.D.

STONEBARGER LAW
A Professional Corporation

STONEBARGER LAW
A Professional Corporation

1  Cal. 2009).  Here, the numerosity requirement is readily met because joinder of absent class

2  members would be exceedingly difficult.  OfficeMax estimates that from March 1, 2010 through

3  February 22, 2011, it requested and recorded approximately 2.6 million ZIP codes.  While

4  OfficeMax disputes whether any given ZIP code capture was a violation of the Song-Beverly

5  Credit Act, it admits for the limited purposes of settlement that the numerosity requirement is

6  satisfied.  Stonebarger Decl. at ¶7.

7              **2.      *Commonality***

8              "The existence of shared legal issues with divergent factual predicates is sufficient [to

9  satisfy commonality], as is a common core of salient facts coupled with disparate legal remedies

10 within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019; *In re First Alliance Mortg.*

11 *Co.*, 471 F.3d 977, 990-91 (9th Cir. 2006).  The commonality requirement is construed

12 "permissively." *Hanlon*, 150 F.3d at 1019; *Wiener*, 255 F.R.D. at 664.

13              In this case, there are multiple "common issues" affecting the entire Class and

14 OfficeMax's liability; mainly, whether OfficeMax's conduct of requesting and recording

15 customers' ZIP codes from its credit card customers violates California Civil Code section

16 1747.08.  Though the Parties dispute whether any given transaction in fact constitutes a violation

17 of section 1747.08, the issue is nonetheless common amongst the Class.  Stonebarger Decl. at ¶8.

18              **3.      *Typicality***

19              Rule 23(a)(3) typicality is satisfied where the plaintiffs' claims are "reasonably

20 coextensive" with absent class members' claims; they need not be "substantially identical;"

21 *Hanlon*, 150 F.3d at 1020; *see also Wiener*, 255 F.R.D. at 665.  The test for typicality "is whether

22 other members have the same or similar injury, whether the action is based on conduct which is

23 not unique to the named Plaintiffs, and whether other class members have been injured by the

24 same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

25 Thus, "[t]he purpose of the typicality requirement is to assure that the interest of the named

26 representative aligns with the interests of the class." *Id.*

27              Dardarian alleges that she was exposed to the same alleged unlawful policy and practice

28 of OfficeMax.  Specifically, Dardarian alleges that OfficeMax requested and recorded her ZIP

STONEBARGER LAW
A Professional Corporation

1 code during a consumer credit card purchase transaction which constituted a violation of section

2 1747.08.  Importantly, Dardarian contends she does not allege any claims or facts unique to

3 herself.  Thus, the requirement of typicality is satisfied. Stonebarger Decl. at ¶9.

### 4. *Adequacy*

5 Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect

6 the interests of the class."  Adequacy is satisfied where (i) counsel for the class is qualified and

7 competent to prosecute the action vigorously, and (ii) the interests of the proposed class

8 representatives are not antagonistic to the interests of the Class.  *See, e.g.*, *Staton v. Boeing*, 327

9 F.3d 938, 957 (9th Cir. 2003); *Hanlon*, 150 F.3d at 1020; *Weiner*, 225 F.R.D. at 667.[2]

10 Plaintiffs have retained Class Counsel with significant experience in prosecuting large

11 consumer protection class actions.  Stonebarger Decl. at ¶¶10-11, Exh. '2'.  Likewise, Dardarian

12 is a member of the proposed Class and has the same interests as the Class in maximizing the

13 recovery from OfficeMax.  She alleges that OfficeMax requested and recorded her ZIP code

14 during a consumer credit card purchase transaction which constituted a violation of section

15 1747.08.  Additionally, Dardarian contends that she does not allege any claims or facts unique to

16 herself or that conflict with the claims of absent Class members.  Thus, Dardarian contends she is

17 an adequate representative.

### B. The Settlement Class Should be Certified Under Rule 23(b)(3)

19 Dardarian and OfficeMax request that the Court, for the purposes of settlement, certify a

20 class of the following individuals under Rule 23(b)(3): "all persons who, between March 1, 2010

21 and February 22, 2011, used a consumer credit card to make a purchase in an OfficeMax retail

22 store located in California, and whose personal ZIP code was requested and recorded in

23 conjunction with the consumer credit card transactions." Excluded are persons from whom

24 OfficeMax requested and recorded a ZIP code for a special purpose incidental, but related to the

25 consumer credit card transaction, including, but not limited to, shipping, delivery, servicing,

---

[2] Rule 23(g)(1) also requires the Court to appoint class counsel.  Plaintiffs request the Court appoint the law firms of Stonebarger Law, APC and Hoffman Libenson Saunders & Barba as Class Counsel.

1  installation, special orders, customer loyalty program applications, and OfficeMax-branded

2  credit card applications.

3    Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the

4  parties can be served best by settling their difference in a single action." *Hanlon*, 150 F.3d at

5  1022 (quoting 7A C.A. Wright, A.R. Miller, & M. Kane, *Federal Practice & Procedure* § 1777

6  (2d ed. 1986)).

7    There are two fundamental conditions to certification under Rule 23(b)(3): (1) questions

8  of law or fact common to the members of the class predominate over any questions affecting

9  only individual members; and (2) a class action is superior to other available methods for the fair

10  and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Local Joint Exec. Bd. of*

11  *Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162-63 (9th Cir.

12  2001); *Hanlon*, 150 F.3d at 1022; *Wiener*, 255 F.R.D. at 668. Rule 23(b)(3) encompasses those

13  cases "in which a class action would achieve economies of time, effort, and expense, and

14  promote... uniformity of decision as to persons similarly situated, without sacrificing procedural

15  fairness or bringing about other undesirable results." *Amchem v. Windsor*, 521 U.S. 591, 615

16  (1997) (citations omitted and alterations in original); *Wiener*, 255 F.R.D. at 668.

17    **1.** ***Common Questions Predominate Over Individual Issues***

18    The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently

19  cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "Predominance

20  is a test readily met in certain cases alleging consumer. . . fraud. . . ." *Id.* "When common

21  questions present a significant aspect of the case and they can be resolved for all members of the

22  class in a single adjudication, there is clear justification for handling the dispute on a

23  representative rather than on an individual basis." *Fed Prac. & Proc.*, § 1778; *Gen. Tel. Co. of*

24  *Sw. v. Falcon,* 457 U.S. 147, 157 n.13 (1982) (noting commonality and typicality tend to merge).

25    The predominance requirement is satisfied here. As discussed above, Class members are

26  entitled to the same legal remedies based on the same alleged wrongdoing: exposure to the same

27  alleged policy and practice. The central issue for every claimant is whether OfficeMax requested

28  and recorded customers' ZIP codes in connection with consumer credit card transactions. Under

STONEBARGER LAW
A Professional Corporation

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1  these circumstances, there is sufficient basis to find that the requirements of Rule 23(b)(3) are

2  satisfied. *See Weiner*, 255 F.R.D. at 669; *Hanlon*, 150 F.3d at 1022.

3      **2.      *A Class Action is the Superior Method to Settle this Controversy***

4      Rule 23(b)(3) sets forth the relevant factors for determining whether a class action is

5  superior to other available methods for the fair and efficient adjudication of the controversy.

6  These factors include:  (i) the class members' interest in individually controlling separate actions;

7  (ii) the extent and nature of any litigation concerning the controversy already begun by or against

8  class members; (iii) the desirability or undesirability of concentrating the litigation of the claims

9  in the particular forum; and (iv) the likely difficulties in managing a class action.  Fed. R. Civ. P.

10  23(b)(3); *see Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190-92 (9th Cir. 2001).

11  "[C]onsideration of these factors requires the court to focus on the efficiency and economy

12  elements of the class action so that cases allowed under subdivision (b)(3) are those that can be

13  adjudicated most profitably on a representative basis." *Zinser*, 253 F.3d at 1190 (citations

14  omitted); *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (finding

15  superiority requirement may be satisfied where granting class certification "will reduce litigation

16  costs and promote greater efficiency").

17      Application of the Rule 23(b)(3) "superiority" factors shows that a class action is the

18  preferred procedure for this Settlement.  The amount of potential monetary relief to which an

19  individual class member would be entitled is not large. *Zinser*, 253 F.3d at 1191; *Wiener* 255

20  F.R.D. at 671.  It is neither economically feasible, nor judicially efficient, for the hundreds of

21  thousands of Class members to pursue their claims against Defendant on an individual basis.

22  *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *Hanlon*, 150 F.3d at 1023;

23  *Vasquez v. Superior Court*, 4 Cal. 3d 800, 808 (1971).  Additionally, the fact of settlement

24  eliminates any potential difficulties in managing the trial of these actions as class-actions.  When

25  "confronted with a request for settlement-only class certification, a district court need not inquire

26  whether the case, if tried, would present intractable management problems . . . for the proposal is

27  that there be no trial." *Amchem*, 521 U.S. at 620.

28  / / /

STONEBARGER LAW
A Professional Corporation

STONEBARGER LAW
A Professional Corporation

## VI. THE PROPOSED CLASS NOTICE PROGRAM IS APPROPRIATE, AND CLASS NOTICE SHOULD BE APPROVED

The threshold requirement concerning the sufficiency of class notice is whether the means employed to distribute the notice is reasonably calculated to apprise the class of the pendency of the action, of the proposed settlement, and of the class members' rights to opt out or object. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). The mechanics of the notice process are best left to the discretion of the court, subject only to the broad "reasonableness" standards imposed by due process.

In this Circuit, it has long been the case that a notice of settlement will be adjudged satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (*citing Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980) (9th Cir. 2004); *Hanlon*, 150 F.3d at 1025 (notice should provide each absent class member with the opportunity to opt-out and individually pursue any remedies that might provide a better opportunity for recovery).

The proposed Class Notice (the Full Notice, the In-Store Notice and the E-mail Notice) meet these standards. *See* Settlement Agreement, Exhs. 'B'-'D' to Exhibit '1' (collectively, the "Notice"). The Notice is written in simple, straightforward language and includes: (1) basic information about the lawsuit; (2) a description of the benefits provided by the Settlement; (3) an explanation of how Class members can obtain Settlement benefits; (4) an explanation of how Class members can exercise their right to opt-out or object to the Settlement; (5) an explanation that any claims against OfficeMax that could have been litigated in these actions will be released if the Class member does not opt out from the Settlement; (6) the names of Class Counsel and information regarding attorneys' fees and expenses and Dardarian's incentive award; (7) the Final Fairness Hearing date; (8) an explanation of eligibility for appearing at the Final Fairness Hearing; and (9) the Settlement Website where additional information can be obtained. *Id.*

Collectively, the Notice provides Class members with sufficient information to make an informed and intelligent decision about the Settlement. As such, they satisfy the content

1   requirements of Rule 23.  *See In re Compact Disc Minimum Advertised Price Antitrust Litig.*,

2   216 F.R.D. 197, 203 (D. Me. 2003) ("notice must describe fairly, accurately and neutrally the

3   claims and parties in the litigation entitled to participate, including the right to exclude

4   themselves from the class").

5      Additionally, the proposed dissemination of Notice to Class members satisfies all due

6   process requirements.  The Settlement provides that OfficeMax will provide notice to the Class

7   after preliminary approval of the Settlement by the Court.  Potential Class members will receive

8   direct Notice via email and/or through conspicuous in-store postings.  *See* Settlement Agreement

9   § 3.2.  And, the Full Class Notice will be available on the Settlement Website.  *Id.* at § 3.2(b).  In

10  sum, the contents and dissemination of the proposed Class Notice constitutes the best notice

11  practicable under the circumstances and fully complies with the requirements of Rule 23.

12  **VII.**  **IF THE SETTLEMENT IS PRELIMINARILY APPROVED, THE COURT

13     SHOULD SCHEDULE A HEARING ON FINAL SETTLEMENT APPROVAL**

14     Following notice to the Class members, a fairness hearing is to be held on the proposed

15  settlement.  *See* Manual for Complex Litigation section 21.633.  It is requested that the Court

16  schedule a hearing on final approval of the settlement to be held approximately 120 days after

17  entry of the Preliminary Approval Order.  The hearing on the final settlement approval should be

18  scheduled now so that the date can be disclosed in the class notice.  Accordingly, it is requested

19  that this Court schedule a hearing on final approval of the settlement for October 22, 2013, at

20  2:00 p.m.

21  **VIII.**  **CONCLUSION**

22     Based upon the foregoing, and because the proposed settlement is fair, reasonable, and

23  advantageous to the proposed Class members, Plaintiffs respectfully request that the Court enter

24  an Order:

25     (1)  preliminarily approving the Settlement Agreement as being fair, reasonable, and

26  adequate;

27     (2)  preliminarily approving the form, manner, and content of the Full Notice, In-Store

28  Notice,  E-mail Notice, and Claim Form;

STONEBARGER LAW
A Professional Corporation

-20-
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    (3)  setting deadlines to submit Claim Forms, object, opt out, and request to appear at the

2    Final Approval Hearing;

3    (4)  provisionally certifying the Class under Rule 23 of the Federal Rules of Civil

4    Procedure for settlement purposes only;

5    (5)  appointing Plaintiff Nancy Dardarian as the Class representative;

6    (6)  appointing the law firms of Stonebarger Law, APC and Hoffman Libenson Saunders

7    & Barba as Class Counsel;

8    (7)  staying all proceedings in the Action until Final Approval; and

9    (8)  setting the Final Approval Hearing on October 22, 2013 at 2:00 p.m.

10   A [Proposed] Preliminary Approval Order is attached as Exhibit E to the Settlement

11   Agreement.

12   Dated: May 10, 2013                STONEBARGER LAW, APC

13                                      HOFFMAN LIBENSON SAUNDERS & BARBA

14

15                                      By: */s/ Gene J. Stonebarger*

16                                          Gene J. Stonebarger
                                           gstonebarger@stonebargerlaw.com
17                                          *Attorneys for Plaintiffs and the Class*

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

STONEBARGER LAW
A Professional Corporation