**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **NANCY DARDARIAN**, *et al.*, <br><br>  Plaintiffs, <br><br> vs. <br><br> **OFFICEMAX NORTH AMERICA, INC.,** <br><br>  Defendants. | Case No.: 11-CV-00947 YGR <br><br> **ORDER DENYING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT WITHOUT PREJUDICE** |

Named Plaintiffs Nancy Dardarian and Nathan Thoms, on behalf of themselves and other customers, brought suit against Defendant OfficeMax North America, Inc. ("OfficeMax") because of its past practice of requesting and recording ZIP[1] code information during credit card transactions in violation of the Song-Beverly Credit Card Act of 1971, Cal. Civ. Code § 1747.08 ("Song-Beverly Act"). Plaintiffs filed a Motion for Preliminary Approval of the Class Action Settlement Agreement, also seeking certification of a class for settlement purposes and approval of the form and content of the notice to be sent to the members of the settlement class.

Having carefully considered the proposed Settlement Agreement, the motion, the papers submitted in support of the motion, and the argument of counsel, the Court hereby **DENIES** the Motion for Preliminary Approval of the Class Action Settlement **WITHOUT PREJUDICE** and **WITH LEAVE** to file a new motion and submit additional material. As set forth more fully below, the Court remains concerned with two fundamental components of the proposed settlement. First, the Court remains concerned that the proposed settlement consisting of "merchandise vouchers" falls within the

---

[1] ZIP is an acronym that stands for "Zone Improvement Plan." (*Pineda v. Williams-Sonoma Stores, Inc.*, 51 Cal. 4th 524, 527 n.2 (Cal. 2011).)

purview of the Class Action Fairness Act's ("CAFA"), 28 U.S.C. § 1712, requirements for coupon settlements, including the evaluation and approval of an appropriate award of attorney's fees. Second, Plaintiffs have not demonstrated that the proposed manner of disseminating the class notice complies with Rule 23 and due process.

## I. BACKGROUND

The Song-Beverly Act prohibits a retailer from requesting personal identification information from a customer during a consumer credit card transaction. (*See Pineda*, 51 Cal. 4th at 534.) A ZIP code is personal identification information. (*Id.*) OfficeMax formerly employed an "Information Capture Policy" whereby its cashiers would request and record customer ZIP codes during credit card transactions. Plaintiffs contend that this policy violated the Song-Beverly Act. OfficeMax disagrees and claims, among other arguments, that it did not reverse-engineer the information. The parties contend that the identification of class members will be difficult as OfficeMax's customers include commercial customers whose information is not separately tracked. The proposed settlement was reached through the assistance of a magistrate judge, at arm's length, and took into account the risks associated with continuing the litigation.

## II. DISCUSSION

### A. Relevant Terms of the Proposed Settlement Agreement

As relevant here, the Court sets forth the provisions of the proposed class action Settlement Agreement which concern (1) the dissemination of "merchandise vouchers," (2) the proposed process by which attorney's fees should be awarded, and (3) the notice to the class:

#### 1. *"Merchandise Vouchers" or Settlement Benefits*

– <u>$10 Vouchers to Class Members</u>: All Class Members who submit a valid, timely claim will receive a Merchandise Voucher with a value of ten dollars. (*See* Settlement Agreement ¶ 2.3.)

– <u>$5 Vouchers to customers</u>: OfficeMax will distribute 120,000 Merchandise Vouchers with a value of five dollars to customers who make purchases in its California retail stores. (*Id.*)

– The Merchandise Vouchers expire within approximately 90 days. (*Id.*)

2. *Attorneys' Fees*:

The parties have agreed that plaintiffs' counsel can apply for fees and costs between $200,000 and $500,000, with OfficeMax reserving the right to contest any request over $200,000. (*See id.* ¶ 2.4.) The Court understands the proposed Settlement Agreement is structured so that attorneys' fees will be awarded *before* the Merchandise Vouchers are redeemed.

3. *Notice*:

OfficeMax will send one email to those of its MaxPerks members for whom it possesses a valid email address, and OfficeMax will post a flier near its customer service counters for 30 days. (*Id.* ¶ 3.2.) No other notice will be provided under the proposed Settlement Agreement.

### B. ATTORNEYS' FEES UNDER CAFA

Although the Court is not ruling on a motion for attorneys' fees at this time, the Court still reviews the fees provisions of a proposed Settlement Agreement. CAFA contains "a series of specific rules that govern the award of attorneys' fees in coupon class actions." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 2013 WL 1986396, at *3 (9th Cir. May 15, 2013) (citing 28 U.S.C. § 1712(a)-(d)). Thus, the classification or nature of the settlement benefit to the class determines whether this CAFA provision applies. The parties argue first that the "merchandise vouchers" are not "coupons" and therefore CAFA does not apply. Next, they argue that even if "merchandise vouchers" are considered to be "coupons," CAFA does not govern the award of attorneys' fees because they seek an award under California Code of Civil Procedure section 1021.5. The Court addresses each argument in turn.

In terms of a legal framework, CAFA controls cases where class members receive "coupons" as part of the settlement proceeds. In those instances, the award of attorneys' fees must be based on the value of the coupons redeemed. (*In re HP Inkjet Printer,* 2013 WL 1986396, at *4.) In passing CAFA, Congress included among its findings the concern that "[c]lass members often receive little or no benefit from class actions, and are sometimes harmed, such as where (A) counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value . . . ." Pub. L. No. 109-2, 119 Stat. 4, § 2(A)(3). The statute does not define the word "coupon."

Plaintiffs first argue that "merchandise vouchers" are not "coupons" because class members can redeem vouchers without spending additional money. Plaintiffs offer scant legal authority for this proposition. The Court agrees that a "coupon settlement" may be one where relief constitutes a discount on another product or service offered by the defendant in lawsuit. (*See True v. American Honda Motor Co.*, 749 F. Supp. 2d 1052, 1069 (C.D. Cal. 2010) (citing *Fleury v. Richemont N. Am., Inc.*, Case No. 05-CV-4525 EMC, 2008 WL 3287154, at *2 (N.D. Cal. Aug. 6, 2008)).) A coupon may be defined as a certificate or form "to obtain a discount on merchandise or services." (Webster's Ninth New Collegiate Dictionary, 1988.) However, the definition is not exclusive; other definitions exist. For instance, Webster's also defines coupons as "a form surrendered in order to obtain an article, service or accommodation." (*Id.*) Coupons are commonly given for merchandise for which no cash payment is expected in exchange. Using the term "voucher" does not change the analysis. "Voucher" is defined similarly as "a form or check indicating a credit against future purchases or expenditures." (*Id.*)

Labels aside, substantively the question centers on the difference of the benefit to each class member when compared to a cash settlement. When evaluating coupon settlements in consumer class actions, courts have focused on such issues as whether: class members may aggregate benefits; class members must spend money to receive the benefit, e.g., a discount on future purchases; the benefit is transferable; or the benefit expires. (*See, e.g.*, *Fleury v. Richemont N. Am., Inc.*, No. C-05-4525 EMC, 2008 U.S. Dist. LEXIS 64521, at *59 (N.D. Cal. July 3, 2008) (identifying class members' ability to aggregate and transfer benefits as factor in approving settlement); *Browning v. YahooA Inc.*, No. C04-01463 HRL, 2007 WL 4105971, at *5 (N.D. Cal. Nov. 16, 2007) (overruling objection that proposed settlement was a "coupon settlement" because class members did not have to spend money to realize benefit ); *Young v. Polo Retail, LLC*, No. C 02 4546 VRW, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007) (identifying transferability of gift card as a factor in approval of voucher settlement); *In re Mexico Money Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001) (approving settlement where class members had thirty-five months to redeem voucher for service used "an average of 14 times annually").)

Here, the proposed Settlement Agreement consists of a "merchandise voucher" for goods or purchases from the defendant itself. The parties argue that this voucher is "akin to cash" because the defendant has numerous items for sale in the five-to-ten dollar price range, and therefore, the voucher need not be viewed as a discount. The voucher is also presumably transferrable. On the other hand, unlike cash, a class member must use-or-lose the voucher within the 90-day redemption period and can only redeem the voucher with the defendant. Vouchers cannot be combined with other coupons or merchandise vouchers, used to purchase gift cards or to pay for prior purchases (i.e., credit card payments), and are not redeemable for cash.

In light of the uncertainty regarding the ultimate value of the settlement, and the factors showing that the settlement is based effectively on a coupon, the Court is not persuaded that it can ignore CAFA's rules governing the award of attorneys' fees. At a minimum, the intent of CAFA should be followed. "Under § 1712 of CAFA, a district court may not award attorneys' fees to class counsel that are 'attributable to' an award of coupons without first considering the redemption value of the coupons." (*In re HP Inkjet Printer Litig.*, 2013 WL 1986396.)

Plaintiffs next argue that the issue of attorneys' fees can be resolved at the time of final approval (i.e., without considering the redemption value of the Merchandise Vouchers) because class counsel will seek attorneys' fees under California Code of Civil Procedure section 1021.5, which permits the award of attorneys' fees under a lodestar method. Section 1021.5 provides the authority upon which to award attorneys' fees, but not a manner to calculate those fees. Indeed, calculating a lodestar multiplier still requires consideration of the value of the settlement.

Assuming final approval, the Court does not expect it can issue a fee award until the merchandise vouchers have been redeemed and the fairness of the settlement ascertained. At that juncture, the Court will need to "consider, among other things, the real monetary value and likely utilization rate of the coupons provided by the settlement." (*True*, 749 F. Supp. 2d at 1073 (quoting S. Rep. No. 109–14, at 31, as reprinted in 2005 U.S.C.C.A.N. 3, 31).) The analysis is especially important here because the parties have yet to provide the Court with any information concerning real value and likely utilization rate. Here, the only component of the proposed Settlement Agreement with any determinate value is the attorneys' fees and incentive payments. There is no information

from which to estimate a claim filing rate, voucher redemption rate, or the real monetary value of a $5 Merchandise Voucher or a $10 Merchandise Voucher with a 90-day redemption period.  Based on the current record, the Court cannot determine the extent to which the proposed relief, including issuing Merchandise Vouchers to consumers who are not members of the class, is adequate or reasonable for the class.

### C. NOTICE TO THE CLASS

Finally, Plaintiffs have not shown that the proposed manner of directing notice of the settlement to the class is sufficient.  "For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." (Fed. R. Civ. P. 23(c)(2)(B).)  Due process does not require actual notice, but a good faith effort to provide actual notice.  (*Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).)

The parties propose directing notice by sending an email to OfficeMax's MaxPerks members for whom it possesses a valid email address, in-store postings, and notice to the government pursuant to CAFA.  Plaintiffs' motion states that the manner of dissemination "satisfies all due process requirements," is "the best notice practicable under the circumstances and fully complies with the requirements of Rule 23."  Nothing in the record substantiates Plaintiffs' assertion.

Plaintiffs have provided no information[2] or legal authority to establish, without further justification, that the proposed manner of providing notice satisfies Rule 23 or due process.  The Court lacks specific information and/or estimates regarding the anticipated success of this process.  Moreover, the Court expects that it will not be able to approve a notice plan unless the parties propose additional methods to provide notice−e.g., print publication.  Without providing any

---

[2] Plaintiffs have provided no information about the effectiveness of reaching the putative class by emailing MaxPerks members, including the percentage of the putative class that are MaxPerks members or the percentage of MaxPerks members for whom OfficeMax has a valid email address.  Nor is there information in the record about whether it is practicable to direct notice to MaxPerks members for whom OfficeMax lacks a valid email address by other means, such as postal mail.  Moreover, there is no information in the record regarding the effectiveness of providing notice through an in-store posting.

Case4:11-cv-00947-YGR   Document114   Filed07/12/13   Page7 of 7

information on the effectiveness or sufficiency of the proposed manner of disseminating the notice, the Court cannot approve the notice provisions of the proposed Settlement Agreement.

### III.   CONCLUSION

For the reasons set forth above, the Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 111) is **DENIED WITHOUT PREJUDICE** and **WITH LEAVE** to file another motion and to submit additional material to address the Court's concerns.

A case management conference shall be held on **Monday, August 19, 2013** on the Court's **2:00 p.m.** Calendar, in the Federal Courthouse, 1301 Clay Street, Oakland, California, in Courtroom 5. No later than five (5) business days prior to the date of the conference either: (a) Plaintiffs shall file another Motion for Preliminary Approval of Class Action Settlement and submit additional material; or (b) the parties shall file a **JOINT STATEMENT** setting forth the status of the litigation and any dates which may need to be reinstated. If the motion is filed, the parties need not appear and the conference will be taken off calendar.

This terminates Docket No. 111.

**IT IS SO ORDERED**.

July 12, 2013

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

7