Gene J. Stonebarger, State Bar No. 209461
gstonebarger@stonebargerlaw.com
Richard D. Lambert, State Bar No. 251148
rlambert@stonebargerlaw.com
STONEBARGER LAW, APC
75 Iron Point Circle, Suite 145
Folsom, CA  95630
Telephone:     (916) 235-7140
Facsimile:     (916) 235-7141

H. Tim Hoffman, State Bar No. 049141
hth@hlsblaw.com
Chad A. Saunders, State Bar No. 257810
cas@hlsblaw.com
HOFFMAN LIBENSON SAUNDERS & BARBA
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
Telephone:  (510) 763-5700
Facsimile:   (510) 835-1311

*Attorneys for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| NANCY DARDARIAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OFFICEMAX NORTH AMERICA, INC., an Ohio corporation,<br><br>Defendant. | Case No. 4:11-cv-00947 YGR<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF REVISED CLASS ACTION SETTLEMENT**<br><br>Date:  November 5, 2013<br>Time: 2:00 p.m.<br>Courtroom:  5 – 2nd Floor<br>Judge: Hon. Yvonne Gonzalez Rogers |
| NATHAN THOMS, individually and on behalf of himself and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OFFICEMAX NORTH AMERICA, INC., an Ohio corporation; and DOES 2 through 50, inclusive,<br><br>Defendants. | Case No. 4:11-cv-02233 YGR |

STONEBARGER LAW
A Professional Corporation

# **TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................... 1

II.   PROCEDURAL HISTORY ..................................................................................... 2

    A.  The Dardarian Action ................................................................................... 2

    B.  The Thoms Action......................................................................................... 2

    C.  Court's Order Relating the Dardarian and Thoms Actions ......................... 3

    D.  Settlement Negotiations ............................................................................... 3

III.  BASIC ELEMENTS OF THE PROPOSED SETTLEMENT.................................. 4

    A.  Class Benefits................................................................................................ 4

    B.  Class Notice................................................................................................... 5

        1.  In-Store Notice................................................................................... 5

        2.  Settlement Website............................................................................ 5

        3.  E-mail Notice..................................................................................... 5

        4.  Notice to MaxPerks Account ............................................................ 6

        5.  Notice by Publication........................................................................ 6

    C.  Completing Claim Forms .............................................................................. 6

    D.  Right to Object............................................................................................... 6

    E.  Right to Elect Not to Participate in the Settlement....................................... 6

    F.  Incentive Payments to Class Representative Dardarian ............................... 7

    G.  Payment to Plaintiff Thoms Not Serving as Class Representative .............. 7

    H.  Attorneys' Fees and Costs ............................................................................ 7

    I.  Settlement Implementation Costs ................................................................. 8

IV.   THE PROPOSED SETTLEMENT IS FAIR AND SHOULD
      RECEIVE PRELIMINARY APPROVAL ............................................................. 8

    A.  The Proposed Settlement Meets All Criteria Establishing Fairness ........... 8

1.  Strength of Plaintiffs' Case ............................................................ 9

2.  The Risk, Expense, Complexity, and Duration of Further
    Litigation and the Risk of Maintaining Class Action Status
    Through Trial.................................................................................. 12

3.  The Benefits Offered in Settlement ............................................. 12

4.  The Extent of Discovery and Stage at Which Settlement
    Is Reached ..................................................................................... 13

5.  Experience and Views of Counsel ............................................... 13

6.  Presence of Governmental Participants ...................................... 14

7.  The Proposed Settlement Resulted from Serious, Informed
    and Non-Collusive Arm's-Length Negotiations......................... 14

V.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED .................... 15

      A.  The Settlement Satisfies the Requirements of Rule 23(a) ......................... 15

          1.  Numerosity................................................................................... 15

          2.  Commonality................................................................................. 15

          3.  Typicality ..................................................................................... 16

          4.  Adequacy ...................................................................................... 16

      B.  The Settlement Class Should be Certified Under Rule 23(b)(3)............... 17

          1.  Common Questions Predominate Over Individual Issues ........... 18

          2.  A Class Action is the Superior Method to Settle
              this Controversy .......................................................................... 18

VI.   THE PROPOSED CLASS NOTICE PROGRAM IS APPROPRIATE,
      AND CLASS NOTICE SHOULD BE APPROVED ...................................... 19

VII.  IF THE SETTLEMENT IS PRELIMINARILY APPROVED, THE
      COURT SHOULD SCHEDULE A HEARING ON FINAL
      SETTLEMENT APPROVAL................................................................ 21

VIII. CONCLUSION................................................................................ 21

# TABLE OF AUTHORITIES

## Federal Cases

*Adams v. Inter-Con Sec. Sys. Inc.,*

   No. C-06-5428 MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007)....................................... 15

*Amchem v. Windsor,*

   521 U.S. 591(1997).............................................................................................................. 18, 19

*Cent. Hanover Bank & Trust Co.,*

   339 U.S. 306 (1950)............................................................................................................. 19

*Churchill Vill., L.L.C. v. GE,*

   361 F.3d 566 (9th Cir. 2004)............................................................................................... 20

*Class Plaintiffs v. City of Seattle,*

   955 F.2d 1268 (9th Cir. 1992)............................................................................................. 9

*Deposit Guar. Nat'l Bank v. Roper,*

   445 U.S. 326 ....................................................................................................................... 19

*Detroit v. Grinnell Corp.,*

   495 F.2d 448 (2nd. Cir. 1974)............................................................................................. 11

*Eisen v. Carlisle & Jacquelin,*

   417 U.S. 156 (1974)............................................................................................................. 19

*Gen. Tel. Co. of Sw. v. Falcon,*

   457 U.S. 147 (1982)............................................................................................................. 18

*Hanlon v. Chrysler Corp.,*

   150 F.3d 1011 (9th Cir. 1998) ....................................................................................... passim

*Hanon v. Dataproducts Corp.,*

   976 F.2d 497 (9th Cir. 1992)............................................................................................... 16

*In re Compact Disc Minimum Advertised Price Antitrust Litig.,*

   216 F.R.D. 197 (D. Me. 2003)............................................................................................. 20

*In re Corrugated Container Antitrust Litig.,*

   643 F.2d 195 (5th Cir. 1981) ............................................................................................... 13

STONEBARGER LAW
A Professional Corporation

STONEBARGER LAW
A Professional Corporation

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*In re Employee Benefit Plans Sec. Litig.*,

    No. 3-92-708, 1993 WL 330595 (D. Minn. June 2, 1993) ...................................... 14

*In re First Alliance Mortg. Co.*,

    471 F.3d 977 (9th Cir. 2006) ...................................................................................... 16

*In re Immune Response Secs. Litigation*,

    497 F. Supp. 2nd 1166 (S.D. Cal. 2007).................................................................. 8, 11

*In re Indep. Energy Holdings PLC*,

    No. 00 Civ. 6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) .............. 15

*In re Mego Financial Corp. Sec. Litigation*,

    213 F.3d 454 (9th Cir. 2000) ........................................................................................ 9

*In re Mercury Interactive Corp. Sec. Litig.*,

    618 F.3d 988 (9th Cir. 2010) ........................................................................................ 8

*In re Warner Commc'ns Sec. Litig.*,

    618 F. Supp. 735 (S.D.N.Y. 1985) ............................................................................ 14

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,

    244 F.3d 1152 (9th Cir. 2001) ................................................................................... 18

*Manchaca v. Chafer*,

    927 F. Supp. 962 (E.D. Tex. 1996) ..................................................................... 14, 15

*Mendoza v. Tucson Sch. Dist. No. 1*,

    623 F.2d 1338 (9th Cir. 1980) ................................................................................... 20

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,

    221 F.R.D. 523 (C.D. Cal. 2004) .............................................................................. 14

*Officers of Justice v. Civil Service Com.*,

    688 F.2d 615 (9th Cir. 1982) ................................................................................. 8, 11

*Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,

    390 U.S. 414, 88 S. Ct. 1157 L. Ed. 2d 1 (1968)....................................................... 9

*Staton v. Boeing*,

    327 F.3d 938 (9th Cir. 2003) ............................................................................... 16, 17

TABLE OF AUTHORITIES

*Torrisi v. Tucson Elec. Power Co.,*

   8 F.3d 1370 (9th Cir. 1993) ............................................................... 8, 9

*Valentino v. Carter-Wallace, Inc.,*

   97 F.3d 1227 (9th Cir. 1996) ................................................................. 19

*Wiener v. Dannon Co., Inc.,*

   255 F.R.D. 658 (C.D. Cal. 2009) ........................................ 15, 16, 18, 19

*Zinser v. Accufix Research Inst., Inc.,*

   253 F.3d 1180 (9th Cir. 2001) ............................................................... 19

**State Cases**

*7-Eleven Owners for Fair Franchising v. Southland Corp.,*

   85 Cal.App.4th 1135 (2000) .................................................................. 11

*Chavez v. Netflix, Inc.,*

   162 Cal.App.4th 43 (2008) .................................................................... 12

*Florez v. Linens 'N Things, Inc.,*

   108 Cal.App.4th 447 (2003) .................................................................... 9

*Pineda v. Williams-Sonoma Stores, Inc.,*

   51 Cal.4th 524 (2011) ................................................................. 1, 10, 11

*The TJX Companies, Inc. v. Superior Court,*

   163 Cal.App.4th 80 (2008) .................................................................... 10

*Vasquez v. Superior Court,*

   4 Cal.3d 800 (1971) .............................................................................. 19

*Young v. Bank of Am.,*

   141 Cal.App.3d 108 (1983) ..................................................................... 9

**Federal Statutes**

28 U.S.C. § 1715(b) ................................................................................ 14

**Federal Rules**

Fed. R. Civ. P. 23 ............................................................................. passim

**State Statutes**

California Civil Code § 1747.08 ......................................................... passim

STONEBARGER LAW
A Professional Corporation

STONEBARGER LAW
A Professional Corporation

1

**Miscellaneous Authorities**

2
3
7A C.A. Wright, A.R. Miller, & M. Kane,
  Federal Practice & Procedure § 1777 (2d ed. 1986) ................................................ 17

4
5
7A C.A. Wright, A.R. Miller, & M. Kane,
  Federal Practice & Procedure §1778 ...................................................................... 18

6
Assem. Floor Analysis, 3d Reading of Assem.,
  Bill No. 2533 (1995-1996 Reg. Sess.) May 15, 1996 ................................................ 10

7
8
Dept. Consumer Affairs, Analysis of Assem.,
  Bill No. 1316 (1995-1996 Reg. Sess.) ...................................................................... 10

9
10
Manual for Complex Litigation,
  § 21.633 .................................................................................................................. 21

11
Newberg on Class Actions,
  § 11.41 (4th ed. 2007) ............................................................................................ 14

12
13
Off. of Sen. Floor Analyses, 3d Reading Analysis of Assem.,
  Bill No. 1316 (1995-1996 Reg. Sess.) July 18, 1995 ................................................ 10

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TABLE OF AUTHORITIES

STONEBARGER LAW
A Professional Corporation

## I.    **INTRODUCTION**

This putative class action was brought by Plaintiffs Nancy Dardarian ("Dardarian") and Nathan Thoms ("Thoms") on behalf of themselves and all other consumers who made a consumer credit card purchase at a California OfficeMax North America, Inc. ("OfficeMax" or "Defendant") retail store between March 1, 2010 and February 22, 2011 and whose ZIP codes were requested and recorded by an OfficeMax employee. Excluded are persons from whom OfficeMax requested and recorded a ZIP code for a special purpose incidental, but related to the consumer credit card transaction, including but not limited to, shipping, delivery, servicing, installation, special orders, customer loyalty program applications, and OfficeMax-branded credit card applications.

OfficeMax is a retailer that owns and operates stores throughout California. This action arises from OfficeMax's alleged violation of the Song-Beverly Credit Card Act, codified as California Civil Code section 1747.08 ("Section 1747.08"), by and through its alleged practice of requesting and recording personal identification information from its customers using credit cards at OfficeMax's retail stores in California.

OfficeMax denies any claim of wrongdoing and asserts dozens of affirmative and separate defenses to liability and class certification issues. Foremost, OfficeMax argues that it did not violate the Song Beverly Credit Card Act or any other laws relating to its alleged conduct. Further, on February 10, 2011 – the same day as the California Supreme Court's decision in *Pineda v. William-Sonoma* Stores, Inc. – OfficeMax immediately informed all California stores to stop requesting ZIP codes at the point-of-sale. Prior thereto, OfficeMax claims to have had relied on multiple California Appellate Court decisions and a Superior Court decision in a lawsuit in which it was a party, holding that ZIP code information was not personal identification information within the meaning of the Song-Beverly Credit Card Act. Moreover, OfficeMax never sold or reverse engineered the ZIP codes recorded at the point-of-sale.

After extensive arms-length negotiations, including a full day mediation session with Judge David A. Garcia (Ret. San Francisco Superior Court Judge) of JAMS and multiple settlement conferences with Magistrate Judge Nandor J. Vadas, Plaintiffs Nathan Thoms and

STONEBARGER LAW
A Professional Corporation

1  Nancy Dardarian (collectively, "Plaintiffs") and OfficeMax (collectively, the "Parties") have

2  entered into a revised Class Action Settlement Agreement and Release (the "Settlement

3  Agreement," a true and correct copy of which is filed concurrently and attached to the

4  Declaration of Gene J. Stonebarger ("Stonebarger Decl.") as **Exhibit '1'**).

5      Plaintiffs' counsel believes that the proposed settlement is fair, reasonable and adequate;

6  therefore, Dardarian now moves the Court for an order: (1) preliminarily approving the

7  Settlement Agreement as being fair, reasonable, and adequate; (2) provisionally certifying the

8  Class under Federal Rule of Civil Procedure 23 for settlement purposes only; (3) preliminarily

9  approving the form, manner, and content of the Class Notices and Claim Form; (4) appointing

10 Plaintiff Nancy Dardarian as the Class Representative; (5) appointing the law firms of

11 Stonebarger Law, APC and Hoffman Libenson Saunders & Barba as counsel for the Class; and

12 (6) setting the date and time of the Fairness Hearing.

13 **II.   PROCEDURAL HISTORY**

14      **A.   The Dardarian Action**

15      On or about March 1, 2011, Plaintiff Nancy Dardarian filed a class action complaint in

16 the United States District Court for the Northern District of California entitled *Nancy Dardarian*

17 *v. OfficeMax Incorporated*, Case No. 4:11-cv-000947-SBA, alleging violations of the Song-

18 Beverly Credit Card Act of 1971, California Civil Code section 1747.08, *et seq.* (the "Dardarian

19 Action").

20      **B.   The Thoms Action**

21      On or about March 4, 2011, Plaintiff Nathan Thoms filed a class action complaint in the

22 Superior Court of the State of California, County of San Francisco entitled *Nathan Thoms v.*

23 *OfficeMax Incorporated, et al.*, Case No. CGC-11-508828, alleging violations of the Song-

24 Beverly Credit Card Act of 1971, California Civil Code section 1747.08, *et seq.* (the "Thoms

25 Action").

26      On May 6, 2011, OfficeMax removed the Thoms Action to the United States District

27 Court for the Northern District of California, where it was assigned the case number 3:11-cv-

28 02233-WHA.

STONEBARGER LAW
A Professional Corporation

**C.    Court's Order Relating the Dardarian and Thoms Actions**

On or about July 27, 2011, the Thoms Action was ordered related to the Dardarian Action and reassigned to the Honorable Saundra Brown Armstrong for all further proceedings.  The Dardarian Action and the Thoms Action were consolidated for all purposes as *Nancy Dardarian v. OfficeMax North America, Inc.*, Case No. 4:11-cv-00947-SBA.  On December 15, 2011, Plaintiffs filed a Consolidated Complaint.

On January 18, 2012, the Consolidated Action was reassigned to Judge Yvonne Gonzalez Rogers for all purposes with the Case Number 4:11-cv-00947-YGR (the "Action").

**D.    Settlement Negotiations**

Plaintiffs engaged in formal discovery and analyzed the relevant legal issues with regards to the claims in, and potential defenses to, the Action.  Stonebarger Decl. at ¶3.  Plaintiffs also considered the uncertainties of trial and the benefits to be obtained under the proposed Settlement Agreement and have considered the costs, risks, and delays associated with the continued prosecution of this time-consuming litigation and the likely appeals of any rulings in favor of either Plaintiffs or Defendant.  *Id.*  The Parties believe their respective positions in the Action are meritorious.  *Id.*  However, due to the uncertainties and expense of protracted litigation, Plaintiffs decided it is in the best interest of Plaintiffs and the Class to explore mutual resolution of the Action.  *Id.*

Accordingly, on February 21, 2012, the Parties participated in an all-day mediation conducted by the Honorable David Garcia (Ret.) of JAMS, an experienced mediator.  *Id.* at ¶4.  On October 25, 2012, November 30, 2012, and January 30, 2013, the Parties participated in Settlement Conferences before Magistrate Judge Nandor J. Vadas, and on November 14, 2012, December 18, 2012, and January 2, 2013, the Parties participated in telephone conferences before Judge Vadas.  *Id.*  As a result of these settlement conferences and telephone conferences, the Parties ultimately agreed on the material terms to resolve this Action and entered into a settlement agreement.  After the June 18, 2013 hearing on the initial motion for preliminary approval where the Court expressed its concerns regarding the notice provisions and the timing of attorneys' fees, the settlement agreement was revised pursuant to further negotiations

1    conducted, including a further Settlement Conference with Judge Vadas on August 7, 2013. *Id.*

2    The revised Settlement Agreement is filed concurrently and attached as Exhibit 1 to Stonebarger

3    Decl.

4    **III.    BASIC ELEMENTS OF THE PROPOSED SETTLEMENT**

5         **A.    Class Benefits**

6         As part of the proposed settlement, $600,000 in $5 Merchandise Vouchers will be

7    distributed to potential Class members. Without the necessity of any claims process, OfficeMax

8    customers who make a purchase in an OfficeMax California retail store will receive a

9    Merchandise Voucher with a value of five dollars ("$5 Merchandise Voucher") as set forth in the

10   Settlement Agreement.  Specifically, within five (5) days of the beginning of the OfficeMax

11   fiscal quarter starting at least seventy-two (72) days after the Court enters Final Order and

12   Judgment, OfficeMax will begin to distribute one hundred and twenty thousand (120,000) $5

13   Merchandise Vouchers, monetary value totaling $600,000, to customers who make purchases in

14   OfficeMax California retail stores. *See* Settlement Agreement § 1.12 and § 2.3(b).

15        Additionally, all Class members who submit a valid, timely claim will receive a

16   Merchandise Voucher with a value of ten dollars ("$10 Merchandise Voucher").  *See* Settlement

17   Agreement § 2.3(a).

18        The $10 Merchandise Vouchers have a 90-day redemption period. The $5 Merchandise

19   Vouchers will be valid beginning no later than thirty (30) days after the start of such OfficeMax

20   fiscal quarter and continuing until the end of the OfficeMax fiscal quarter in which they are

21   issued.  Both the $10 and $5 Merchandise Vouchers are transferable with standard terms,

22   including (i) one Merchandise Voucher may be used per customer per transaction; (ii) the

23   Merchandise Voucher cannot be combined with any other Merchandise Voucher, coupon, offer,

24   discount, OfficeMax Customer Perks, and/or Retail Connect pricing; (iii) the Merchandise

25   Voucher is valid on regular, sale, promotional and/or clearance priced items; (iv) the

26   Merchandise Voucher is not valid on purchases of gift cards, general-use prepaid cards, phone

27   cards, Virgin Mobile devices, or U.S. postage stamps; (v) the Merchandise Voucher is not valid

28   on prior purchases or for credit card payments; (vi) the Merchandise Voucher is void if copied,

STONEBARGER LAW
A Professional Corporation

-4-

sold, purchased, taxed and where prohibited; (vii) the original Merchandise Voucher must be surrendered at time of purchase; (viii) the Merchandise Voucher is not redeemable for cash and no cash or credit back; and (ix) the Merchandise Voucher is only redeemable at a California OfficeMax retail location. *See* Settlement Agreement § 2.3(a)-(b).

**B.   Class Notice**

The Notice of Class Action Settlement will be provided through the following methods:

**1.   *In-Store Notice***

Within forty-two (42) days after the Court enters an order granting Preliminary Approval of the Settlement, OfficeMax will post or place, for thirty (30) days, a tear-away written notice (substantially similar to the Short-Form Notice attached as Exhibit 'C') at customer service near the point of sale in its California retail stores. *See* Settlement Agreement § 3.2(a).

**2.   *Settlement Website***

Within fourteen (14) business days after the Court enters an order granting Preliminary Approval of the Settlement, the Settlement Administrator will establish an Internet-based website and post a detailed notice (substantially similar to the Full Notice attached as Exhibit 'D') and the claim form (substantially similar to the Claim Form attached as Exhibit 'A'). *See* Settlement Agreement § 3.2(b).

**3.   *E-mail Notice***

Within forty-two (42) days after the Court enters an order granting Preliminary Approval of the Settlement, OfficeMax will send electronic mail communications (substantially similar to the Electronic Notice attached as Exhibit 'B') to all of its MaxPerks members for whom it possesses a valid e-mail address and who engaged in a credit card purchase transaction in one of its California retail stores between March 1, 2010 and February 22, 2011 wherein a five digit ZIP code was recorded. The electronic message will notify the recipient of the proposed settlement and that he or she may be a Class member who is entitled to make a claim. The electronic message will include a link to the Settlement Administrator's settlement website, in plain text format, and will instruct the recipient to copy and paste the link into their web browser to view the full notice and to submit a claim. *See* Settlement Agreement § 3.2(c).

STONEBARGER LAW
A Professional Corporation

STONEBARGER LAW
A Professional Corporation

### 4.    *Notice to MaxPerks Account*

Within forty-two (42) days after the Court enters an order granting Preliminary Approval of the Settlement, OfficeMax will post a notice (substantially similar to the Electronic Notice attached as Exhibit 'B') to all of its MaxPerks members' accounts for whom it does not possess a valid e-mail address and who engaged in a credit card purchase transaction in one of its California retail stores between March 1, 2010 and February 22, 2011 wherein a five digit ZIP code was recorded.  *See* Settlement Agreement § 3.2(d).

### 5.    *Notice by Publication*

Within forty-two (42) days after the Court enters an order granting Preliminary Approval of the Settlement, OfficeMax will cause the Short-Form Notice (substantially similar to the Short-Form Notice attached as Exhibit 'C') to be published on one (1) day in the Los Angeles and San Francisco regional print markets of USA Today.  *See* Settlement Agreement § 3.2(e).

### C.    <u>Completing Claim Forms</u>

To receive a $10 Merchandise Voucher, Class members must complete and timely submit a claim form to the Settlement Administrator within forty-five (45) days after the deadline set by the Court for OfficeMax to provide In-Store, Publication and Electronic Notice.  Timeliness of a Claim Form will be determined by the date postmarked by the postal service or other expedited delivery service, or, if submitted electronically through the Settlement Website, the date the Settlement Administrator receives the claim form, as evidenced by the transmission receipt.  *See* Settlement Agreement § 3.4.

### D.    <u>Right to Object</u>

Any Class member who wishes to object to the settlement must file a signed, written objection with the Court and serve copies on Class Counsel and OfficeMax's counsel within the deadline set by the Court.  *See* Settlement Agreement § 3.5.

### E.    <u>Right to Elect Not to Participate in the Settlement</u>

Class members who wish to request to be excluded from or opt out of the settlement must submit a written, signed Request for Exclusion to the Settlement Administrator within the deadline set by the Court. The Request for Exclusion must set forth, among others, the date and

location of any transaction(s) in which the Class member used a consumer credit card to make a purchase at a California OfficeMax retail store between March 1, 2010 and February 22, 2011. Each Class member who does not submit a Request for Exclusion will be deemed to participate in the settlement and all releases provided in the Settlement Agreement. *See* Settlement Agreement § 3.8.

**F.    Incentive Payments to Class Representative Dardarian**

After Dardarian and OfficeMax agreed to the Class benefits, OfficeMax agreed that it would not object to a request by Dardarian for the Court's approval of an award of an incentive payment of $4,500.00 in recognition of the risk to her as the Class representative in commencing the Action, both financial and otherwise, and the amount of time and effort spent by Dardarian as the Class representative. *See* Settlement Agreement § 2.5.

Accordingly, in the event this Settlement Agreement receives Final Judicial Approval, OfficeMax will pay an incentive award of $4,500.00 to proposed Class Representative Dardarian. *See* Settlement Agreement § 2.5.

Dardarian will provide further supporting documentation and briefing regarding the agreed upon award for Dardarian's incentive payment in her Motion for an Award of Attorneys' Fees and Costs to Class Counsel and for Incentive Award to the Class Representative.

**G.    Payment to Plaintiff Thoms Not Serving as Class Representative**

In consideration for the General Release of Plaintiff Thoms, OfficeMax agrees to pay $1,750 to resolve his individual claims. *See* Settlement Agreement § 2.6.

**H.    Attorneys' Fees and Costs**

After Dardarian and OfficeMax reached an agreement as to the Class benefits, the Parties had significant settlement discussions regarding Plaintiffs' request for attorneys' fees and costs, including discussions with Judge Vadas. The Parties eventually agreed that Plaintiffs' counsel can apply for fees and costs subject to a floor of $200,000 and a ceiling of $500,000. In this regard, Plaintiffs agreed not to petition the Court for more than $500,000 in attorneys' fees and costs. OfficeMax, likewise, agreed that it would not object to a request by Plaintiffs for the Court's approval of an award of attorneys' fees and costs in the amount of up to $200,000.

STONEBARGER LAW
A Professional Corporation

STONEBARGER LAW
A Professional Corporation

1  OfficeMax, however, preserved its right to oppose any application for attorneys' fees and costs

2  in excess of $200,000.  *See* Settlement Agreement § 2.4.

3       Plaintiffs will provide further supporting documentation and briefing regarding the

4  awards for attorneys' fees and costs in their Motion for an Award of Attorneys' Fees and Costs

5  to Class Counsel and for Incentive Awards to the Class Representatives.  OfficeMax will file and

6  serve its response thereto (if any) within forty five (45) days of receipt of Plaintiffs' motion for

7  attorneys' fees.  Plaintiffs' motion for attorneys' fees will be filed prior to the deadline for Class

8  members to object to the Settlement Agreement.  *See In re Mercury Interactive Corp. Sec. Litig.*,

9  618 F.3d 988 (9th Cir. 2010).

10      The amount of attorneys' fees and costs will be determined by the Court after the

11 redemption period for the Merchandise Vouchers has ended and the redemption rate has been

12 determined.  Specifically, within fourteen (14) days after the end of the redemption period for the

13 Merchandise Vouchers, and before the Court determines the amount of fees and costs to award

14 Plaintiffs' counsel, OfficeMax will file a report with the Court evidencing how many $5 and $10

15 Merchandise Vouchers were redeemed.  *See* Settlement Agreement § 2.4.

16      **I.      Settlement Implementation Costs**

17      OfficeMax will bear all reasonable costs of retaining the Settlement Administrator to

18 effectuate the settlement contemplated in the Settlement Agreement and providing Notice to the

19 Class.  *See* Settlement Agreement § 2.7.

20 **IV.   THE PROPOSED SETTLEMENT IS FAIR AND SHOULD RECEIVE
       PRELIMINARY APPROVAL**

21

22      **A.      The Proposed Settlement Meets All Criteria Establishing Fairness.**

23      As explained by the court in *In re Immune Response Secs. Litigation*, 497 F. Supp. 2nd

    1166, 1169-1170 (S.D. Cal. 2007):

24

25      "Although Rule 23(e) is silent respecting the standard by which a proposed
        settlement is to be evaluated, the universally applied standard is whether the
        settlement is fundamentally fair, adequate and reasonable.' *Officers for Justice*,

26      688 F.2d at 625; see also *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375
        (9th Cir. 1993).  When determining whether approval of a settlement is warranted,

27      courts consider 'several factors which may include, among others, some or all of
        the following: [1] the strength of Plaintiffs' case; [2] the risk, expense,

28      complexity, and likely duration of further litigation; [3] the risk of maintaining

class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.' *Torrisi*, 8 F.3d at 1375; see also *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Further, '[t]o survive appellate review, the district court must show it has explored comprehensively all [fairness] factors.' *Hanlon*, 150 F.3d at 1026 (citing *Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 434, 88 S. Ct. 1157, 20 L. Ed. 2d 1 (1968)). Finally, 'the settlement may not be the product of collusion among the negotiating parties.' [*In re*] *Mego Financial Corp. Sec. Litigation*, 213 F.3d [454] at 458 [(9th Cir. 2000)] (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992))."[1]

### 1.      Strength of Plaintiffs' Case

Plaintiffs assert that OfficeMax violated California Civil Code section 1747.08 in that as part of processing its customers' consumer credit card transactions at a California OfficeMax retail store, OfficeMax requested and recorded customers' ZIP codes. California Civil Code section 1747.08, in its present form, states in relevant part:

(a) Except as provided in subdivision (c), no person, firm, partnership, association, or corporation which accepts credit cards for the transaction of business shall do either of the following:

(2) *Request*, or require as a condition to accepting the credit card as payment in full or in part for goods or services, *the cardholder to provide personal identification information, which the person, firm, partnership, association, or corporation accepting the credit card writes, causes to be written, or otherwise records upon the credit card transaction form or otherwise.*" Cal. Civ. Code § 1747.08(a)(2) (emphasis added).

California Civil Code section 1747.08 is part of the Song-Beverly Credit Card Act and was designed to promote consumer protection; the Act imposes fair business practices for the protection of consumers. *Florez v. Linens 'N Things, Inc.*, 108 Cal. App. 4th 447, 450 (2003) (*citing Young v. Bank of Am.*, 141 Cal. App. 3d 108 (1983)). Plaintiffs contend that Section 1747.08 was originally enacted as a response to two principal privacy concerns: first, that with increased use of computer technology, very specific and personal information about a consumer's spending habits was being made available to anyone willing to pay for it; and second, that acts of harassment and violence were being committed by store clerks who obtained customers' phone numbers and addresses. *Id.* at 452; *see also* Off. of Sen. Floor Analyses, 3d

STONEBARGER LAW
A Professional Corporation

---

[1]  The guidance of Rule 23(e)(2) of the Federal Rules of Civil Procedure on the approval of a class action settlement is that it must be "fair, reasonable, and adequate."

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF REVISED CLASS ACTION SETTLEMENT

1  Reading Analysis of Assem. Bill No. 1316 (1995-1996 Reg. Sess.) July 18, 1995, p. 3.

2         Additionally, Plaintiffs contend the statute was intended to keep the customer's credit

3  card number separate and apart from his or her personal information such as address, telephone

4  number, birth date, etc., in order to prevent thieves from obtaining both at the same time (*i.e.*,

5  "dumpster diving") and engaging in credit card fraud, usually over the telephone.  Assem. Floor

6  Analysis, 3d Reading of Assem. Bill No. 2533 (1995-1996 Reg. Sess.) May 15, 1996, pp. 1-2.

7  When drafting 1747.08, the Legislature was well aware that anyone with access to a consumer's

8  credit card number and address could access their credit history, open credit in their name, or

9  charge something in their name.  Dept. Consumer Affairs, Analysis of Assem. Bill No. 1316

10 (1995-1996 Reg. Sess.) p. 1.

11        The California Supreme Court issued its unanimous opinion in *Pineda v. Williams-*

12 *Sonoma Stores, Inc.*, 51 Cal. 4th 524 (2011), confirming that ZIP codes are "personal

13 identification information" as defined in section 1747.08.  *Pineda*, 51 Cal. 4th at 524.  Pursuant

14 to California Civil Code section 1747.08(e), a violator of the statute shall be liable for a civil

15 penalty of up to $250.00 for the first violation and up to $1,000.00 for each subsequent violation

16 of the statute.  Cal. Civ. Code § 1747.08(e).  Although a violator of the statute is subject to a

17 mandatory civil penalty, the amount of the civil penalty to be imposed against a Defendant is

18 discretionary.  Civil penalties could be as little as a penny or the "proverbial peppercorn."  *See*

19 *The TJX Companies, Inc. v. Superior Court*, 163 Cal.App.4th 80, 86-87 (2008).

20        OfficeMax denies any wrongdoing in this case.  OfficeMax contends that it has sought to

21 comply with California Civil Code section 1747.08 at all times.  After the *Pineda* Court held that

22 ZIP code information is personal identification information within the meaning of the Act,

23 OfficeMax immediately instructed all California stores to end requesting and recording ZIP

24 codes at the point-of-sale.  OfficeMax contends that it never requested ZIP codes at the point-of-

25 sale in its California retail stores for direct marketing purposes or to sell such information to third

26 parties.  OfficeMax has never reverse engineered a customer's name and ZIP code to obtain their

27 full mailing address or telephone number.  Rather, OfficeMax requested and recorded ZIP codes

28 to evaluate store locations and for placement of Sunday newspaper pre-print inserts.  In addition,

STONEBARGER LAW
A Professional Corporation

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF REVISED CLASS ACTION SETTLEMENT

STONEBARGER LAW
A Professional Corporation

1  OfficeMax claims to have extensive measures implemented to protect customer information.

2  In determining whether the settlement is fair, the Court has to assess whether the relief

3  offered by the settlement is reasonable, in light of the claims to be released.   At this stage, the

4  Court need only to conduct a *prima facie* review of the relief and notice provided by the

5  settlement to determine whether notice should be sent to the settlement class members.  *In re*

6  *Immune Response*, 497 F.Supp.2d at 1172.  It is simply "not appropriate for the court to attempt

7  to settle these questions of law and fact: '[T]he settlement or fairness hearing is not to be turned

8  into a trial or rehearsal for trial on the merits.  Neither the trial court nor [the appellate court] is

9  to reach any ultimate conclusions on the contested issues of fact and law which underlie the

10  merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of

11  wasteful and expensive litigation that induce consensual settlements.'"  *Id.* (*citing Officers of*

12  *Justice v. Civil Service Com.*, 688 F.2d 615, 625 (9th Cir. 1982)).

13  In sum, "the merits of the underlying class claims are not a basis for upsetting the

14  settlement of a class action; the operative word is 'settlement.'"  *7-Eleven Owners for Fair*

15  *Franchising v. Southland Corp.*, 85 Cal.App.4th 1135, 1150 (2000).  Even "[t]he fact that a

16  proposed settlement may only amount to a fraction of the potential recovery does not, in and of

17  itself, mean that the proposed settlement is grossly inadequate and should be disapproved."

18  *Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2nd. Cir. 1974).

19  Plaintiffs believe that this case is strong in light of the California Supreme Court's

20  unanimous decision in *Pineda* confirming that "requesting and recording a cardholder's ZIP

21  codes, without more, violates the [California] Credit Card Act."  *Pineda*, 51 Cal.4th at 527-28.

22  The outcome of this case is uncertain, however, and if OfficeMax was to prevail on its arguments

23  in its Opposition to Dardarian's pending Motion for Class Certification, the Class would obtain

24  little or nothing through litigation.  Even if Plaintiffs were to convince the Court to certify the

25  Class after a contested motion for class certification and eventually establish liability at trial,

26  then the amount of the civil penalty to be awarded (somewhere between a penny and $1,000)

27  would rest within the sound discretion of the trial court. *Id.* at 536.  As such, if Plaintiffs and the

28  Class succeed at trial, the amount of the civil penalties to be awarded by the Court is uncertain.

STONEBARGER LAW
A Professional Corporation

1  OfficeMax maintains that penalties, if any, should be the proverbial peppercorn as OfficeMax

2  claims that it has always sought to comply with the Song-Beverly Credit Card Act, did not use

3  ZIP codes requested and recorded at the point-of-sale to invade the privacy of its customers, and

4  the putative class members did not suffer any injury.

5          **2.      *The Risk, Expense, Complexity, and Duration of Further Litigation and*
6                  *the Risk of Maintaining Class Action Status Through Trial*

7          The settlement takes into account the risk, expense, and complexity of further litigation.

8  Plaintiffs have retained an expert in the credit card industry and would be required to retain

9  additional experts to conduct forensic analysis of the recording and storage of OfficeMax's

10  customer information, as well as experts to testify to the value of the collected information.

11  Stonebarger Decl. at ¶5.

12          OfficeMax would vigorously oppose Dardarian's attempt to get a class certified and has

13  retained an expert to defeat certification and the Class claims, and an expert affidavit has already

14  been filed with the Court.  *Id.*

15          Additional time consuming and expensive law and motion proceedings would be

16  necessary to narrow or eliminate the claims and defenses both at the certification stage and the

17  trial stage.  The time and expense of further litigation could potentially negatively impact

18  OfficeMax's business operations and would interfere with potential Class members' opportunity

19  to obtain benefits promptly.  Accordingly, the settlement at this stage in the litigation benefits the

20  Court, the Parties, and the Class.  *Id.*

21          **3.      *The Benefits Offered in Settlement***

22          Each Class member is eligible to receive a $10 *and* $5 Merchandise Voucher.  Such

23  recovery to the proposed Settlement Class is *without* any risk of the Class not being certified and

24  is without any risk that Plaintiffs will not prevail as to liability and/or in recovering penalties.

25  While the dollar value of the settlement per Class member may be relatively small, it must be

26  remembered that any allegation of alleged harm may be difficult to prove.  *See Chavez v. Netflix,*

27  *Inc.*, 162 Cal.App.4th 43, 55 (2008) (Six dollar benefit provided by the settlement - free DVD

28  rentals - directly addresses the harm alleged in the complaint.  While the dollar value of the

-12-

1  settlement per class member is small, Plaintiffs would have encountered considerable difficulties

2  in trying to prove their amount.).

3          **4.      The Extent of Discovery and Stage at Which Settlement Is Reached**

4          It is *not* the law that a class action cannot be settled until the last particle of discovery has

5  been completed and analyzed. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195,

6  211 (5th Cir. 1981) ("'It is true that very little formal discovery was conducted and that there is

7  no voluminous record in the case.  However, the lack of such does not compel the conclusion

8  that insufficient discovery was conducted'") (emphasis omitted).

9          Through mutual exchange of formal discovery, and depositions of OfficeMax

10  representatives under Rule 30(b)(6), Plaintiffs believe they have discovered both the evidence

11  needed to establish their *prima facie* cases and to address the full range of contentions advanced

12  by OfficeMax.  In that process, among other things, OfficeMax provided Plaintiffs with

13  information relating to its policies and practices regarding the collection of personal

14  identification information.  As such, while OfficeMax disagrees with Plaintiffs' assessment of

15  the evidence produced, OfficeMax agrees that counsel for each of the Parties has sufficient

16  information to assess the strengths, weaknesses, and likely expense of taking this case to trial.

17  Stonebarger Decl. at ¶6.

18          **5.      Experience and Views of Counsel**

19          Class Counsel has extensive experience litigating consumer class actions and has litigated

20  numerous cases based upon violations of the Song-Beverly Credit Card Act.  Stonebarger Decl.

21  at ¶¶10-11, Exh. '2'.  Class Counsel has represented millions of consumers in numerous

22  consumer class actions asserting violations of the Song-Beverly Credit Card Act of 1971. *Id.*

23          Based upon Class Counsel's substantial experience, Class Counsel believes the present

24  settlement is in the best interest of the Class members due to the significant recovery to the Class

25  members, without any risk of the Class not being certified and not prevailing as to liability

26  and/or civil penalties. *Id.* at ¶12.

27  / / /

28  / / /

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF REVISED CLASS ACTION SETTLEMENT

STONEBARGER LAW
A Professional Corporation

6.    ***Presence of Governmental Participants***

Although there is no governmental entity participating in this matter as of this time, full and complete notice is being provided to all appropriate state and federal authorities. OfficeMax will provide such notice, which will include all appropriate information and documents required by CAFA (28 U.S.C. § 1715(b)) including: (1) all complaints filed in the Action, (2) the proposed Settlement Agreement, and (3) settlement notification to Class members and benefit election procedure. As such, the fact of that notice and the opportunity governmental entities will have to take part in the final approval process weigh in favor of preliminary approval.

7.    ***The Proposed Settlement Resulted from Serious, Informed and Non-Collusive Arm's-Length Negotiations***

The requirement that a settlement be fair is designed to protect against collusion among the parties. *See Hanlon*, 150 F.3d at 1026. Typically, "[t]here is a presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented for Court approval." *Newberg on Class Actions*, § 11.41 (4th ed. 2007); *see also Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are the most closely acquainted with the facts of the underlying litigation."); *In re Employee Benefit Plans Sec. Litig.*, No. 3-92-708, 1993 WL 330595, at *5 (D. Minn. June 2, 1993) ("[t]he court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement").

Here, the Parties engaged the services of Judge Garcia of JAMS and attended multiple settlement conferences before Judge Vadas. Stonebarger Decl. ¶4. Before the mediation and the settlement conferences, Class Counsel exchanged information through formal discovery and obtained information from OfficeMax relating to information necessary to evaluate the potential amount of civil penalties. *Id.* Thus, Plaintiffs and their counsel, who are experienced in prosecuting this type of complex class action, had "a clear view of the strengths and weaknesses" of their cases and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement. *See, e.g., In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985); *see also Manchaca v. Chafer*, 927 F. Supp. 962, 967 (E.D. Tex.

STONEBARGER LAW
A Professional Corporation

1   1996).

2          The fact that the Settlement Agreement was facilitated by an experienced mediator and a

3   Magistrate Judge confirms that it is not collusive.  *See, e.g., Adams v. Inter-Con Sec. Sys. Inc.*,

4   No. C-06-5428 MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) ("The assistance of an

5   experienced mediator in the settlement process confirms that the settlement is non-collusive.");

6   *In re Indep. Energy Holdings PLC*, No. 00 Civ. 6689 (SAS), 2003 WL 22244676, at *4

7   (S.D.N.Y. Sept. 29, 2003) ("the fact that the Settlement was reached after exhaustive arm's-

8   length negotiations, with the assistance of a private mediator experienced in complex litigation,

9   is further proof that it is fair and reasonable").  Further, the nature of the subsequent negotiations

10  between the Parties, the experience of counsel in this area, and the fair result reached are all

11  evidence of the arms-length nature of the negotiations that lead to the Settlement Agreement.

12  **V.       THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED**

13        **A.      The Settlement Satisfies the Requirements of Rule 23(a)**

14          Rule 23(a) enumerates four prerequisites for class certification: (1) numerosity; (2)

15  commonality; (3) typicality; and (4) adequacy.  Plaintiffs believe that each of these requirements

16  is met.  OfficeMax stipulates to certification of the Class for settlement purposes only.

17                **1.      *Numerosity***

18          Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is

19  impracticable."  Fed. R. Civ. P. 23(a); *Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 664 (C.D.

20  Cal. 2009).  Here, the numerosity requirement is readily met because joinder of absent class

21  members would be exceedingly difficult.  OfficeMax estimates that from March 1, 2010 through

22  February 22, 2011, it requested and recorded approximately 2.6 million ZIP codes.  While

23  OfficeMax disputes whether any given ZIP code capture was a violation of the Song-Beverly

24  Credit Act, it admits for the limited purposes of settlement that the numerosity requirement is

25  satisfied.  Stonebarger Decl. at ¶7.

26                **2.      *Commonality***

27          "The existence of shared legal issues with divergent factual predicates is sufficient [to

28  satisfy commonality], as is a common core of salient facts coupled with disparate legal remedies

STONEBARGER LAW
A Professional Corporation

-15-

1  within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019; *In re First Alliance Mortg.*

2  *Co.*, 471 F.3d 977, 990-91 (9th Cir. 2006). The commonality requirement is construed

3  "permissively." *Hanlon*, 150 F.3d at 1019; *Wiener*, 255 F.R.D. at 664.

4      In this case, there are multiple "common issues" affecting the entire Class and

5  OfficeMax's liability; mainly, whether OfficeMax's conduct of requesting and recording

6  customers' ZIP codes from its credit card customers violates California Civil Code section

7  1747.08. Though the Parties dispute whether any given transaction in fact constitutes a violation

8  of section 1747.08, the issue is nonetheless common amongst the Class. Stonebarger Decl. at ¶8.

9      **3.**   ***Typicality***

10      Rule 23(a)(3) typicality is satisfied where the plaintiffs' claims are "reasonably

11  coextensive" with absent class members' claims; they need not be "substantially identical;"

12  *Hanlon*, 150 F.3d at 1020; *see also Wiener*, 255 F.R.D. at 665. The test for typicality "is

13  whether other members have the same or similar injury, whether the action is based on conduct

14  which is not unique to the named Plaintiffs, and whether other class members have been injured

15  by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.

16  1992). Thus, "[t]he purpose of the typicality requirement is to assure that the interest of the

17  named representative aligns with the interests of the class." *Id.*

18      Dardarian alleges that she was exposed to the same alleged unlawful policy and practice

19  of OfficeMax. Specifically, Dardarian alleges that OfficeMax requested and recorded her ZIP

20  code during a consumer credit card purchase transaction which constituted a violation of section

21  1747.08. Importantly, Dardarian contends she does not allege any claims or facts unique to

22  herself. Thus, the requirement of typicality is satisfied. Stonebarger Decl. at ¶9.

23      **4.**   ***Adequacy***

24      Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect

25  the interests of the class." Adequacy is satisfied where (i) counsel for the class is qualified and

26  competent to prosecute the action vigorously, and (ii) the interests of the proposed class

27  representatives are not antagonistic to the interests of the Class. *See, e.g., Staton v. Boeing*, 327

28

STONEBARGER LAW
A Professional Corporation

-16-

1    F.3d 938, 957 (9th Cir. 2003); *Hanlon*, 150 F.3d at 1020; *Weiner*, 225 F.R.D. at 667.[2]

2         Plaintiffs have retained Class Counsel with significant experience in prosecuting large

3 consumer protection class actions. Stonebarger Decl. at ¶¶10–11, Exh. '2'. Likewise, Dardarian

4 is a member of the proposed Class and has the same interests as the Class in maximizing the

5 recovery from OfficeMax. She alleges that OfficeMax requested and recorded her ZIP code

6 during a consumer credit card purchase transaction which constituted a violation of section

7 1747.08. Additionally, Dardarian contends that she does not allege any claims or facts unique to

8 herself or that conflict with the claims of absent Class members. Thus, Dardarian contends she is

9 an adequate representative.

10      **B.**    **The Settlement Class Should be Certified Under Rule 23(b)(3)**

11         Dardarian and OfficeMax request that the Court, for the purposes of settlement, certify a

12 class of the following individuals under Rule 23(b)(3): "all persons who, between March 1, 2010

13 and February 22, 2011, used a consumer credit card to make a purchase in an OfficeMax retail

14 store located in California, and whose personal ZIP code was requested and recorded in

15 conjunction with the consumer credit card transactions." Excluded are persons from whom

16 OfficeMax requested and recorded a ZIP code for a special purpose incidental, but related to the

17 consumer credit card transaction, including, but not limited to, shipping, delivery, servicing,

18 installation, special orders, customer loyalty program applications, and OfficeMax-branded

19 credit card applications.

20         Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the

21 parties can be served best by settling their difference in a single action." *Hanlon*, 150 F.3d at

22 1022 (quoting 7A C.A. Wright, A.R. Miller, & M. Kane, *Federal Practice & Procedure* § 1777

23 (2d ed. 1986)).

24         There are two fundamental conditions to certification under Rule 23(b)(3): (1) questions

25 of law or fact common to the members of the class predominate over any questions affecting

26 only individual members; and (2) a class action is superior to other available methods for the fair

27

28   [2] Rule 23(g)(1) also requires the Court to appoint class counsel. Plaintiffs request the Court appoint the law firms of Stonebarger Law, APC and Hoffman Libenson Saunders & Barba as Class Counsel.

STONEBARGER LAW
A Professional Corporation

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF REVISED CLASS ACTION SETTLEMENT

and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162-63 (9th Cir. 2001); *Hanlon*, 150 F.3d at 1022; *Wiener*, 255 F.R.D. at 668. Rule 23(b)(3) encompasses those cases "in which a class action would achieve economies of time, effort, and expense, and promote... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem v. Windsor*, 521 U.S. 591, 615 (1997) (citations omitted and alterations in original); *Wiener*, 255 F.R.D. at 668.

### 1. *Common Questions Predominate Over Individual Issues*

The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "Predominance is a test readily met in certain cases alleging consumer. . . fraud. . . ." *Id.* "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Fed Prac. & Proc.*, § 1778; *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) (noting commonality and typicality tend to merge).

The predominance requirement is satisfied here. As discussed above, Class members are entitled to the same legal remedies based on the same alleged wrongdoing: exposure to the same alleged policy and practice. The central issue for every claimant is whether OfficeMax requested and recorded customers' ZIP codes in connection with consumer credit card transactions. Under these circumstances, there is sufficient basis to find that the requirements of Rule 23(b)(3) are satisfied. *See Weiner*, 255 F.R.D. at 669; *Hanlon*, 150 F.3d at 1022.

### 2. *A Class Action is the Superior Method to Settle this Controversy*

Rule 23(b)(3) sets forth the relevant factors for determining whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy. These factors include: (i) the class members' interest in individually controlling separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action. Fed.

STONEBARGER LAW
A Professional Corporation

-18-

1    R. Civ. P. 23(b)(3); *see Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190-92 (9th Cir.

2    2001). "[C]onsideration of these factors requires the court to focus on the efficiency and

3    economy elements of the class action so that cases allowed under subdivision (b)(3) are those

4    that can be adjudicated most profitably on a representative basis." *Zinser*, 253 F.3d at 1190

5    (citations omitted); *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir.

6    1996) (finding superiority requirement may be satisfied where granting class certification "will

7    reduce litigation costs and promote greater efficiency").

8         Application of the Rule 23(b)(3) "superiority" factors shows that a class action is the

9    preferred procedure for this Settlement. The amount of potential monetary relief to which an

10   individual class member would be entitled is not large. *Zinser*, 253 F.3d at 1191; *Wiener* 255

11   F.R.D. at 671. It is neither economically feasible, nor judicially efficient, for the hundreds of

12   thousands of Class members to pursue their claims against Defendant on an individual basis.

13   *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *Hanlon*, 150 F.3d at 1023;

14   *Vasquez v. Superior Court*, 4 Cal. 3d 800, 808 (1971). Additionally, the fact of settlement

15   eliminates any potential difficulties in managing the trial of these actions as class-actions. When

16   "confronted with a request for settlement-only class certification, a district court need not inquire

17   whether the case, if tried, would present intractable management problems . . . for the proposal is

18   that there be no trial." *Amchem*, 521 U.S. at 620.

19   **VI.   THE PROPOSED CLASS NOTICE PROGRAM IS APPROPRIATE, AND CLASS
20          NOTICE SHOULD BE APPROVED**

21        The threshold requirement concerning the sufficiency of class notice is whether the

22   means employed to distribute the notice is reasonably calculated to apprise the class of the

23   pendency of the action, of the proposed settlement, and of the class members' rights to opt out or

24   object. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974); *Mullane v. Cent. Hanover*

25   *Bank & Trust Co.*, 339 U.S. 306, 315 (1950). The mechanics of the notice process are best left

26   to the discretion of the court, subject only to the broad "reasonableness" standards imposed by

27   due process.

28   ///

STONEBARGER LAW
A Professional Corporation

STONEBARGER LAW
A Professional Corporation

1    In this Circuit, it has long been the case that a notice of settlement will be adjudged

2    satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those

3    with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill.,*

4    *L.L.C. v. GE,* 361 F.3d 566, 575 (9th Cir. 2004) (*citing Mendoza v. Tucson Sch. Dist. No. 1,* 623

5    F.2d 1338, 1352 (9th Cir. 1980); *Hanlon,* 150 F.3d at 1025 (notice should provide each absent

6    class member with the opportunity to opt-out and individually pursue any remedies that might

7    provide a better opportunity for recovery).

8    The proposed Class Notice (the Full Notice, the Short-Form Notice and the Electronic

9    Notice) meet these standards. *See* Settlement Agreement, Exhs. 'B'-'D' to Exhibit '1'

10    (collectively, the "Notice"). The Notice is written in simple, straightforward language and

11    includes: (1) basic information about the lawsuit; (2) a description of the benefits provided by the

12    Settlement; (3) an explanation of how Class members can obtain Settlement benefits; (4) an

13    explanation of how Class members can exercise their right to opt-out or object to the Settlement;

14    (5) an explanation that any claims against OfficeMax that could have been litigated in these

15    actions will be released if the Class member does not opt out from the Settlement; (6) the names

16    of Class Counsel and information regarding attorneys' fees and expenses and Dardarian's

17    incentive award; (7) the Final Fairness Hearing date; (8) an explanation of eligibility for

18    appearing at the Final Fairness Hearing; and (9) the Settlement Website where additional

19    information can be obtained. *Id.*

20    Collectively, the Notice provides Class members with sufficient information to make an

21    informed and intelligent decision about the Settlement. As such, they satisfy the content

22    requirements of Rule 23. *See In re Compact Disc Minimum Advertised Price Antitrust Litig.,*

23    216 F.R.D. 197, 203 (D. Me. 2003) ("notice must describe fairly, accurately and neutrally the

24    claims and parties in the litigation entitled to participate, including the right to exclude

25    themselves from the class").

26    Additionally, the proposed dissemination of Notice to Class members satisfies all due

27    process requirements. The Settlement provides that OfficeMax will provide notice to the Class

28    after preliminary approval of the Settlement by the Court. Potential Class members will receive

-20-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF REVISED CLASS ACTION SETTLEMENT

direct Notice via email, through conspicuous in-store postings, through their MaxPerks account, and/or through publication in USA Today. *See* Settlement Agreement § 3.2. And, the Full Class Notice will be available on the Settlement Website. *Id.* at § 3.2(b). In sum, the contents and dissemination of the proposed Class Notice constitutes the best notice practicable under the circumstances and fully complies with the requirements of Rule 23.

## VII.   IF THE SETTLEMENT IS PRELIMINARILY APPROVED, THE COURT SHOULD SCHEDULE A HEARING ON FINAL SETTLEMENT APPROVAL

Following notice to the Class members, a fairness hearing is to be held on the proposed settlement. *See* Manual for Complex Litigation section 21.633. It is requested that the Court schedule a hearing on final approval of the settlement to be held approximately 120 days after entry of the Preliminary Approval Order. The hearing on the final settlement approval should be scheduled now so that the date can be disclosed in the class notice. Accordingly, it is requested that this Court schedule a hearing on final approval of the settlement for March 25, 2014, at 2:00 p.m.

## VIII.   CONCLUSION

Based upon the foregoing, and because the proposed settlement is fair, reasonable, and advantageous to the proposed Class members, Plaintiffs respectfully request that the Court enter an Order:

(1)   preliminarily approving the Settlement Agreement as being fair, reasonable, and adequate;

(2)   preliminarily approving the form, manner, and content of the Full Notice, Short-Form Notice,  Electronic Notice, and Claim Form;

(3)   setting deadlines to submit Claim Forms, object, opt out, and request to appear at the Final Approval Hearing;

(4)   provisionally certifying the Class under Rule 23 of the Federal Rules of Civil Procedure for settlement purposes only;

(5)   appointing Plaintiff Nancy Dardarian as the Class representative;

(6)   appointing the law firms of Stonebarger Law, APC and Hoffman Libenson Saunders

-21-

1    & Barba as Class Counsel;

2        (7)  staying all proceedings in the Action until Final Approval; and

3        (8)  setting the Final Approval Hearing on March 25, 2014 at 2:00 p.m.

4

5    Dated: September 12, 2013              STONEBARGER LAW, APC

6                                          HOFFMAN LIBENSON SAUNDERS & BARBA

7

8                                          By: */s/ Gene J. Stonebarger*
                                              Gene J. Stonebarger
9                                             gstonebarger@stonebargerlaw.com
10                                            *Attorneys for Plaintiffs and the Class*

11

STONEBARGER LAW
A Professional Corporation

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF REVISED CLASS ACTION SETTLEMENT