UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANCY DARDARIAN, ET AL.,<br><br>  Plaintiffs,<br><br>  v.<br><br>OFFICEMAX NORTH AMERICA, INC.,<br><br>  Defendant. | Case No.  11-cv-00947-YGR<br><br>**ORDER GRANTING IN PART RENEWED MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS**<br><br>Re: Dkt. No. 142 |

On September 23, 2014, plaintiffs filed their renewed[1] motion for an award of attorneys' fees and costs, seeking a total of $500,000 for prosecuting and settling the instant action. (Dkt. No. 142 ("Mot.").) Defendant OfficeMax North America, Inc. ("OfficeMax") opposes the motion only to the extent that plaintiffs seek more than $200,000 in fees and costs. (Dkt. No. 143 ("Oppo.").) On October 14, 2014, plaintiffs filed their reply. (Dkt. No. 144 ("Reply").) The Court vacated the hearing on the motion, finding it was appropriately subject to decision without oral argument. (Dkt. No. 145.) Having carefully considered the papers submitted and the record in this case, and for the reasons set forth below, the Court awards attorneys' fees and costs in the amount of $200,000. Therefore, the motion is **GRANTED IN PART** and **DENIED IN PART**.

**I.   RELEVANT FACTS**

The instant case was filed as a putative class action on March 1, 2011, alleging violations of California's Song-Beverly Credit Card Act of 1971, Civil Code § 1747.08 ("Song-Beverly

---

[1] The Court terminated plaintiffs' initial motion for attorneys' fees for docket management purposes pending a determination of the total amount of vouchers redeemed, permitting the parties to incorporate their earlier briefs by reference in connection with the renewed motion. The motion, opposition, and reply to plaintiffs' initial motion are at Docket Nos. 133, 136, and 137, respectively.

Credit Card Act"), by OfficeMax. (Dkt. No. 1.) OfficeMax previously requested and recorded customer credit card numbers and personal identification information, namely ZIP codes, at the point of sale. Section 1747.08 prohibits businesses, in certain circumstances, from requesting "the cardholder to provide personal identification information, which the . . . corporation accepting the credit card writes, causes to be written, or otherwise records . . . ." Cal. Civ. Code § 1747.08(a)(2); *see also Pineda v. Williams-Sonoma Stores, Inc.*, 51 Cal. 4th 524, 527 (2011) ("In light of the statute's plain language, protective purpose, and legislative history, we conclude a ZIP code constitutes 'personal identification information' as that phrase is used in section 1747.08."). OfficeMax claims it "immediately" ceased collecting ZIP codes at its California stores after the *Pineda* ruling issued on February 10, 2011 and prior to the filing of the instant lawsuit on March 1, 2011. (Oppo. at 10 (emphasis omitted).) Plaintiffs do not dispute this claim. However, the Court's June 25, 2012 Order held that "the *Pineda* decision applies retrospectively in this case." (Dkt. No. 58 at 1.)

The parties eventually entered into a settlement agreement. In the process of reaching that agreement, they did not negotiate the amount of attorneys' fees and costs until after the other material terms of the settlement had been reached. (Dkt. No. 133-5 (Declaration of H. Tim Hoffman in Support of Plaintiffs' Motion for Attorneys' Fees, Costs, and Incentive Award) at ¶ 3.) The Court ultimately approved a settlement that would provide $5 and $10 "Merchandise Vouchers" to class members and others.[2] (Dkt. No. 140; *see also* Dkt. No. 126-3 ("Settlement Agreement").) In the settlement agreement, the parties "agreed to a floor of $200,000.00 and a ceiling of $500,000.00 in attorneys' fees and costs," to be determined by the Court after the conclusion of the voucher redemption period.[3] (Settlement Agreement § 2.4.) The parties agreed not to appeal an award falling within that range and for the fees to be paid by OfficeMax within

---

[2] The $5 vouchers were distributed to customers making purchases in California retail stores during a specified time period. Therefore, many recipients of these vouchers were presumably not class members. The $10 vouchers were provided to class members who timely submitted valid claim forms.

[3] However, OfficeMax did preserve its right to challenge any fees and costs in any amount relating to Nathan Thoms' claims against OfficeMax.

ten (10) business days of the Court's Order. (*Id*.) No class members objected to the proposed settlement, including the fee range.

Vouchers with a face value of more than $600,000 in the aggregate were distributed. (Dkt. No. 143-4 (Declaration of Elham Marder Regarding Redemption of Merchandise Vouchers) at ¶¶ 9, 11.) Ultimately, by the conclusion of the redemption period, only 579 of the $10 vouchers and 6,846 of the $5 vouchers had been redeemed, with a total value of $40,020. (*Id*. at ¶¶ 10, 12.) Because only the $10 vouchers were distributed through the claim form process, much of the total amount may not have gone to members of the class.

## II.   DISCUSSION

The Supreme Court has recognized that, while it is appropriate for a district court to exercise its discretion in determining an award of attorneys' fees, it remains important for the court to provide "a concise but clear explanation of its reasons for the fee award." *Hensley v. Eckerhart*, 461 U.S. 424 (1983); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("We review a district court's award of attorneys fees for an abuse of discretion."). The Court considers three issues to determine the appropriate amount of such fees: (i) the approved Settlement Agreement, (ii) the requirements of the Class Action Fairness Act of 2005 ("CAFA"), and (iii) California Code of Civil Procedure section 1021.5.

### A.   Settlement Agreement

No dispute exists that the parties resolved this action with a term allowing for attorneys' fees to be awarded in an amount no less than $200,000 and no more than $500,000. The Court understands that the parties and the lawyers in this action are collectively sophisticated and versed in this legal arena. Counsel for the defense has provided examples of similar litigation where the defendant paid fees in the range of $200,000.[4] However, at the time of the settlement, no one was able to determine whether the redemption of the Merchandise Vouchers was to be closer to the issuance amount of approximately $600,000 or, as was the case here, a much lower amount of

---

[4] Defendant cites a number of other Song-Beverly Credit Card Act settlements, including several involving class counsel, where attorneys' fee awards were approximately $200,000. (Oppo. at 20-22.)

3

$40,020.

In determining an appropriate fee award, the Court considers the existence and fairness of the Settlement Agreement, the arms-length negotiation of fees to resolve the dispute, the lack of financial impact on the class itself, and the relative experience and sophistication of the parties. These factors weigh heavily in ordering an award within the agreed-upon range.

### B.    Class Action Fairness Act

#### i.    Legal Framework

"Congress passed CAFA 'primarily to curb perceived abuses of the class action device.' One such perceived abuse is the coupon settlement, where defendants pay aggrieved class members in coupons or vouchers but pay class counsel in cash." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1177 (9th Cir. 2013) (internal citations omitted). CAFA has a section dedicated to attorneys' fees calculations in the case of "coupon settlements." 28 U.S.C. § 1712. Generally, "the attorneys' fees provisions of § 1712 are intended to put an end to the 'inequities' that arise when class counsel receive attorneys' fees that are grossly disproportionate to the actual value of the coupon relief obtained for the class." *In re HP Inkjet Printer Litig.*, 716 F.3d at 1179 (citing S. Rep. 109-14, at 29-32).

In a split opinion, the Ninth Circuit held in cases providing coupon relief that "a district court may not award attorneys' fees to class counsel that are 'attributable to' an award of coupons without first considering the redemption value of the coupons." *In re HP Inkjet Printer Litig.*, 716 F.3d at 1187. Where class members receive *only* coupons as part of the settlement proceeds, CAFA dictates that the award of attorneys' fees must be based on the value of the coupons redeemed. *See id.* at 1182 (Where a settlement "only provides for coupon relief . . . the portion of any attorneys' fees award that is attributable to the award of the coupons must be one hundred percent. Because the settlement contains only coupons, the fees award cannot be 'attributable to' anything but the coupons."). In considering the proprietary of a particular fee award, results matter. *In re Oclaro, Inc. Derivative Litig.*, No. C-11-3176 EMC, 2014 WL 4684993, at *5 (N.D. Cal. Sept. 19, 2014) (quoting *In re HP Inkjet Printer Litig.*, 716 F.3d at 1182) ("While the hard work of counsel is a 'necessary condition' to obtaining attorney's fees, 'it is never a sufficient

4

1 condition.'").

      **ii.    Analysis**

As plaintiffs acknowledge (Dkt. No. 133-1 at 9), the Court has already considered the relevant factors and determined that "the settlement [at issue] is based effectively on a coupon," and that "[a]t a minimum, the intent of CAFA should be followed." (Dkt. No. 114 at 5.) Plaintiffs' motion calls for reconsideration of that earlier order. Plaintiffs did not seek leave to file a motion for reconsideration under Civil Local Rule 7-9. Regardless, the Court is not inclined to disturb its earlier ruling that the vouchers at issue were essentially coupons and that *HP Inkjet* therefore applies.

This Court does not stand alone in its rationale. For instance, in another case in this district involving similar restrictions, the court reviewed CAFA's legislative history and found that a voucher for $20 or 30 percent off (at the option of the class member) was a coupon for purposes of CAFA's attorneys' fees provision. *Davis v. Cole Haan, Inc.*, Case No. 11-cv-01826 JSW, 2013 WL 5718452, at *2 (N.D. Cal. Oct. 21, 2013) ("The vouchers expire within six months, may only be redeemed in Cole Haan's California stores, are transferable, may not be combined with any other promotional coupon or voucher, and are not redeemable for cash, including cash back."). The circumstances in that case are closely analogous to those at issue here, where the vouchers: would expire in 2-3 months; were usable only in California OfficeMax locations; were transferable; were not to be used in conjunction with any other voucher coupon, offer, or discount; and were not redeemable for cash or cash back. (Settlement Agreement § 2.3.) Plaintiffs' cited cases, finding vouchers did not constitute coupons in certain circumstances, are distinguishable. *See, e.g., Seebrook v. Children's Place Retail Stores, Inc.*, Case No. 11-cv-837 CW, 2013 WL 6326487, at *1-2 (N.D. Cal. Dec. 4, 2013) (finding a $10 voucher was not a "coupon" for purposes of the CAFA where the majority of the merchandise available in the stores at issue was sold for $10 or less). In the present case, unlike in *Seebrook*, about two thirds of the merchandise in OfficeMax's California locations could not be purchased using the more common $5 vouchers provided for via the settlement without additional payment. (Dkt. No. 112-1 (Declaration of Dheeraj Trikha in Support of Motion for Preliminary Approval of Class Action Settlement) at ¶ 4.)

5

1  Moreover, "even if the instant case did not involve any coupons such that CAFA would not apply,
2  courts have still found the [relevant] CAFA provision instructive when the benefit to the class is
3  coupon-like." *Fleury v. Richemont N. Am., Inc.*, Case No. 05-cv-4525 EMC, 2008 WL 3287154,
4  at *3 (N.D. Cal. Aug. 6, 2008).

CAFA requires that "the portion of any attorney's fee award to class counsel that is attributable to the award of . . . coupons shall be based on the value to class members of the coupons that are redeemed." 28 U.S.C.A. § 1712. In "considering the redemption value of the coupons," as this Court must, *In re HP Inkjet Printer Litig.*, 716 F.3d at 1186, only the minimal amount of agreed-upon fees is appropriate. Under these circumstances, there is no statutory requirement or binding authority mandating the application of a precise percentage.

### C.  California Code of Civil Procedure Section 1021.5

Given the request for $500,000 in attorneys' fees and the low redemption rates, it is not surprising that plaintiffs argue attorneys' fees should be awarded pursuant to California Code of Civil Procedure section 1021.5 using a lodestar method and that CAFA's coupon settlement provision consequently does not apply. The only case they cite in support of this proposition, however, simply points out that section 1021.5 fees are typically calculated using the lodestar method. *Seebrook*, 2013 WL 6326487, at *2. There, having found that the vouchers at issue were not coupons under CAFA, the court had no need to determine whether *HP Inkjet* calls for consideration of the redemption value of coupons in the case of awards under state fee-shifting statutes. In the absence of any relevant authority to the contrary from plaintiffs, the Court finds that *HP Inkjet* controls and that it must consider the value of redeemed coupons in determining an appropriate fee award in this case.

The Court finds that a fee award exceeding the $200,000 minimum of the negotiated range is not warranted in light of the relevant circumstances. Notably, class members redeemed no more than $40,020 in vouchers[5] and received no injunctive or equitable relief.[6] The requested fee award

---

[5] As noted above, presumably some of the vouchers at issue were redeemed by OfficeMax customers who were not members of the class. Additionally, vouchers are generally worth less to consumers than the amount of their face value in cash where their use is subject to various restrictions.

1   of $500,000 would be grossly disproportionate to the benefit conferred on the class and the public,
2   particularly in light of the fact that OfficeMax had apparently voluntarily ceased its accused
3   practice prior to the filing of this lawsuit. *See HP Inkjet*, 716 F.3d at 1179. The full amount
4   requested is also excessive and unreasonable in light of the complexity of the case.[7]

5   Having found that CAFA is the appropriate framework for determining the proper amount
6   of the fee award regardless of whether fees are awarded pursuant to section 1021.5 or otherwise,
7   the Court need not evaluate further plaintiffs' specific request for fees under section 1021.5.
8   Nonetheless, the Court notes that even if it had held otherwise, plaintiffs failed to satisfy their
9   burden of supporting the requested fee amount of $500,000 under the lodestar method.
10  Specifically, they have failed to submit detailed records substantiating the reasonableness of the
11  entirety of the substantial number of hours claimed.[8] *See Beauford v. E.W.H. Grp. Inc.*, Case No.
12  09-CV-00066, 2009 WL 3162249, at *6 (E.D. Cal. Sept. 29, 2009) ("The fee applicant bears the
13  burden of documenting the appropriate hours expended in the litigation and must submit evidence
14  in support of those hours worked.").

---

[6] Because the Court has determined that a lodestar calculation is not appropriate in this case, and has instead considered the propriety of the fee award in light of the value of vouchers actually redeemed, it need not address the parties' dispute regarding whether fees can be recovered for work done on behalf of plaintiff Nathan Thoms, who was ultimately not included as a class representative in the certification motion. (Reply at 8.)

[7] Defendant notes that class counsel have filed dozens of lawsuits under the Song-Beverly Credit Card Act, and have reused certain discovery requests and pleadings across those cases. (Oppo. at 18-19.)

[8] Counsel offered to submit timesheets for in camera review "should the Court request it." (Reply at 10.) However, plaintiffs were required to file sufficient information to support the fee request along with the motion, and not simply upon the Court's request. Moreover, as defendant argues, the contemplated procedure would deprive defendant of the opportunity to review the relevant materials in opposing the fee request. (Oppo. at 20.) Plaintiffs failed to respond to defendant's understandable concern. In fact, class counsel have previously been informed, in another case, that the contemplated procedure was inappropriate. *Concepcion v. Amscan Holdings, Inc.*, 223 Cal. App. 4th 1309, 1325 (2014) ("[It] was not permissible . . . for the [trial] court to invite an in camera review of time sheets and billing records not also made available to [defendant] and then to award fees without providing an opportunity for further argument based on the supplemental evidence presented."). While detailed timesheets are not a prerequisite to an award of attorneys' fees, the declarations of class counsel lend insufficient credence to the reasonableness of a claim for more than $200,000 in fees in light of the complexity of this case.

### III. CONCLUSION

As set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** plaintiffs' renewed motion for attorneys' fees and costs. Defendant shall pay class counsel $200,000 in attorneys' fees and costs in the manner contemplated by the settlement agreement.

This Order terminates Docket No. 142.

**IT IS SO ORDERED.**

Dated: December 30, 2014

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**